## 38504. HOLCOMB v. THE STATE.

HILL, Presiding Justice.

The defendant, Arthur Lee Holcomb, was convicted of the murder of Junior Sheffield and sentenced to life imprisonment. He appeals.

The defendant's son Michael testified that on Saturday, November 8, 1980, the day of the shooting, he and a friend were walking by Sheffield's house throwing rocks. Sheffield told them not to hit his house and to get off the street. When they said they were not throwing rocks at his house, Sheffield pulled out a knife, threatened them and kicked the friend in the buttocks. The boys returned home and reported the incident to the defendant when he arrived home from work.

Shortly thereafter, the defendant and his son John left the house to go into town. On the way, they picked up the defendant's son Lee who was walking into town. When they saw Sheffield's pickup truck at a convenience store, they pulled alongside. What happened next is disputed. In any event gunfire was exchanged, the defendant firing five shots and Sheffield firing three shots. Both men were wounded. The defendant was taken to the hospital by his sons.

Sheffield's girl friend, Gwen Law, was in the store during the shooting. She testified that after the shooting stopped, she ran out of the store and helped Sheffield back into his truck. Despite her protest that he needed medical attention, he insisted that he be taken home. However, once they arrived at his house, Ms. Law persuaded him to go to the hospital. Upon arriving at the hospital, Sheffield saw the defendant's car and a police car and said, "There they are." Ms. Law then said, "You mean you shot somebody," to which he replied, "I

guess I did."

Sheffield and the defendant were examined in the emergency room. The defendant had been shot in the stomach and in the back, eventually losing a kidney from his wounds. Sheffield had been shot in the abdomen and had a laceration on his scalp, possibly caused by splinters of glass. The defendant's wounds were more serious, and he was operated on first. Sheffield underwent surgery to remove the bullet from his abdomen on Saturday evening, November 8. According to the surgeon, the surgery was successful and the victim was expected to recover. His condition was "fine" on Sunday. However, "complications" set in suddenly about 3 a.m. on Monday, November 10, and the victim died. The nature of the complications is not disclosed by the transcript.

The victim's sister and sister-in-law testified, over objection, that on Saturday prior to his surgery, Sheffield told them "I'm dying" and related his account of the shooting. He said that earlier in the day he had asked the defendant's son to stop throwing rocks because he was afraid the windows on his truck would be broken. That evening, he was sitting in his truck at the convenience store when he was "dazed" and felt blood running down his face. He realized that he had been shot and reached for his gun (which was in a holster mounted on the door of his truck). The defendant then opened the door of the truck and shot him in the abdomen. Sheffield said that he shot at the defendant in self-defense.

The defendant admitted the shooting but said he acted in self-defense. He testified that he walked over to Sheffield's truck to question him about the incident earlier in the day. Suddenly, Sheffield kicked open the door of the truck and opened fire on the defendant with a pistol, wounding him in the stomach. The defendant stumbled back, reached into his back pocket and pulled out his pistol (the defendant is a former policeman who allegedly always carries a gun), and returned the fire, hitting the victim in the abdomen. The defendant then ran behind the the truck and, after several more shots were exchanged through the rear window, attempted to run away. The victim jumped out of the truck, said "I'm going to kill you" and shot the defendant in the back. The defendant called to his sons to drive the car over and take him to the hospital, which they did. The defendant's sons also testified that Sheffield shot first.

There were no other witnesses to the shooting. The physical evidence presented at trial, consisting of the location of bullet holes in the victim's truck, was consistent with both the victim's and the defendant's version of events. The defendant introduced evidence that the victim had a reputation for violence, and that at the time of

the shooting the victim's blood alcohol content was .14. The jury found the defendant guilty of murder.

The defendant contends that the trial court erred in permitting the victim's sister and sister-in-law to testify as to the victim's statements made prior to his surgery and further erred in failing to instruct the jury concerning the law of dying declarations.

There is no question but that the victim's account of the shooting, when related at trial by his sister and sister-in-law, was hearsay. Code Ann. § 38-301. However, a statement such as this may be admissible under the "dying declaration" exception to the hearsay rule if the requirements of Code Ann. § 38-307 are satisfied. Code § 38-307 provides: "Declarations by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, shall be admissible in evidence in a prosecution for homicide." Thus, it was not error to admit the victim's statement in this case, if: (1) The victim was in "the article of death" at the time the statement was made, and (2) he was aware that he was in the article of death.

In determining whether the two-prong test of Code Ann. § 38-307 for admitting a hearsay statement as a dying declaration has been met, both the trial court and the jury are involved. The trial court must first determine whether prima facie the requirements of the Code section are satisfied. E.g., *Simpson v. State,* 168 Ga. 598 (2a) (148 SE 511) (1929); *Swain v. State,* 149 Ga. 629 (4) (101 SE 539) (1919). If the trial court determines that a prima facie showing has been made, the statement is admitted into evidence, and the jury makes the ultimate determination as to whether the declarant was in the article of death at the time the statement was made and was conscious of his condition. E.g., *Carter v. State,* 227 Ga. 788, 794 (183 SE2d 392) (1971); *Emmett v. State,* 195 Ga. 517, 533-34 (25 SE2d 9) (1943), overruled on other grounds, *Howard v. State,* 237 Ga. 471, 474 (228 SE2d 860) (1976); *Findley v. State,* 125 Ga. 579 (1) (54 SE 106) (1906).

In the present case, the trial court held a hearing outside the presence of the jury in order to decide the prima facie admissibility of the victim's statement as a dying declaration. The victim's sister testified that he said "I'm dying." The attending physician and surgeon testified that at the time the victim's statement was made, the victim was not at the point of death and was never in danger of dying until "complications" suddenly set in two days after surgery. The defendant argued that the victim was not in the article of death at the time he related his version of the shooting, and thus his statement was inadmissible hearsay. The trial judge ruled that the state had made out a prima facie showing on the question of the

admissibility of the alleged dying declaration and that, notwithstanding the doctor's testimony, he would let the jury decide whether the victim was in the article of death at the time the statement was made.

At the conclusion of the charge to the jury and after the jury retired, the district attorney observed that the jury had not been instructed as to dying declarations, defense counsel objected to the court's failure to give several of his requests to charge, the court inquired as to whether there was anything else, and the district attorney said "no." The exhibits were then examined and sent to the jury room.

The state argues that the defendant did not request a charge as to dying declarations and waived the right to raise this issue on appeal by not objecting to the court's failure to so charge.

Here the evidence was in conflict as to whether the victim was "in the article of death," the trial judge stated that the jury would be instructed on the subject, and his failure to do so was called to his attention at the conclusion of the charge. The defendant did not induce the error nor did the defendant ever make any statement or reply which would constitute waiver. *Jackson v. State,* 246 Ga. 459 (271 SE2d 855) (1980), is therefore not applicable under the facts of this case.

Regarding the requirement of a request for charge, the judge had announced that the charge as to dying declarations would be given and his failure to do so was called to his attention. Moreover, in *Thomas v. State,* 150 Ga. 269 (1) (103 SE 244) (1920), the court held: "On the trial of one indicted for murder, where the court after a preliminary hearing admits in evidence dying declarations offered by the State, the failure to instruct the jury as to their consideration of that character of evidence is not cause for a new trial, where the State does not rely for conviction solely on dying declarations, and where there is no appropriate and timely written request for instructions as to them." Here the state necessarily relied solely on the dying declaration and under the facts of this case we find that it was error to fail to instruct the jury thereon.[1]

We have examined the defendant's remaining enumerations of error and conclude that either these issues do not show reversible

---

[1] *Thrash v. State,* 227 Ga. 775 (4) (183 SE2d 376) (1971), relied on by the state, followed *Thomas v. State,* supra, and found that the charge was not required in that case. *Carter v. State,* 227 Ga. 788 (4) (183 SE2d 392) (1971), also relied upon by the state, dealt with charging as to the credibility of the victim who made a dying declaration and it is inapposite here.

error, or are not likely to arise on retrial, and therefore need not be addressed.

*Judgment reversed. All the Justices concur.*

DECIDED JULY 8, 1982.

*Lonzy F. Edwards,* for appellant.

*Theron Finlayson, District Attorney, Michael J. Bowers, Attorney General, Virginia H. Jeffries, Staff Assistant Attorney General,* for appellee.