## S90A1557. PHILLIPS v. THE STATE.
### (399 SE2d 202)

FLETCHER, Justice.

The appellant, Michael Kenneth Phillips, was convicted of the felony murder of Nell Grams. He appeals. We affirm.[1] The evidence showed the following:

The appellant and the decedent lived in Maplebrook Apartments on Atlanta Road in Cobb County. They both drank heavily, and although they tended to get along with each other during the weekdays, they engaged in raucous fights on weekends.

During the early afternoon hours of Friday, August 5, 1988, the appellant and a neighbor left their apartments to purchase some vodka. Later that afternoon, the appellant was seen striking the decedent with a closed fist outside of their apartment. He then kicked her, dragged her by the hair of her head into their apartment, and slammed the door. Loud noises were heard coming from the apartment.

Later that evening, the decedent was found at the bottom of a hill behind the apartment she shared with appellant. She was uttering the appellant's name and emitting blood-curdling screams for someone to help her. There was blood on her face and her hair, and her clothing was in disarray. Police and paramedics were summoned.

A police officer testified that when he arrived on the scene, he detected the odor of alcohol on the decedent's breath, but her condition was not that of a typical drunk. He testified that the decedent "was totally out of it. . . . She couldn't give me a name. All she would do is she'd go into a scream, then calm down for a minute. She wouldn't respond to anything. Then she'd scream again, and she just seemed all, you know, totally in disarray."

The evidence shows that only the appellant and the decedent were in their apartment on the evening of August 5. After the decedent was transported to the hospital, the police knocked on the appellant's door but he did not respond. The police returned to appellant's apartment on August 6, and they gained admittance to the apartment

---

[1] The murder was committed on August 5, 1988. Appellant was indicted on January 5, 1989. The trial began on October 30, 1989, and ended on November 2, 1989. A motion for new trial was filed on December 4, 1989, and amended on May 11, 1990. The amended motion for new trial was denied on July 3, 1990. The transcript was filed on August 20, 1990. The appeal was docketed in this Court on August 23, 1990. The case was submitted for decision without oral argument on October 5, 1990.

after repeatedly knocking on the door and identifying themselves as police. Analysis of the decedent's blood at the hospital did not reveal the presence of any alcohol.

The decedent was taken to Smyrna Hospital and admitted as a Jane Doe during the early morning hours of August 6. At that time, she had multiple contusions over her face and eyes, a laceration on the left side of her forehead, and a fracture of the nasal bone. She was disoriented and belligerent. The emergency room physician testified that her head injuries were consistent with her having been beaten up, and her behavior was consistent with the earliest phase of head injury.

The decedent was admitted to the intensive care unit at approximately 9:00 a.m. on August 6 by Ms. Jona Dorsey, the attending nurse. Ms. Dorsey testified that the decedent was traumatized and unable to communicate and that she was saying things like, " 'Stop it. Michael, don't do that Michael,' alternating with, 'I'm sorry, Michael. I didn't mean it, Michael. Please forgive me, Michael.' "

Ms. Dorsey next saw the decedent at approximately 6:00 a.m. the next day. At that time, she was more lucid. "She was verbalizing, She was aware of the year, the president, those types of things." During periods of lucidity, Ms. Dorsey engaged the decedent in conversation in order to determine whether she was a battered woman. Ms. Dorsey testified that although the decedent's vital signs were stable, and although she was not on a ventilator or taking medications to keep her alive, hospital personnel had been informed that the decedent "didn't stand a good chance of surviving." Ms. Dorsey informed the decedent that she could be dying. The decedent told Ms. Dorsey that she did not remember what had happened. Ms. Dorsey then asked her to tell her the last thing she remembered. Ms. Dorsey testified:

> She said the last thing she remembered was standing at the kitchen stove cooking supper and her back was to Michael, and she said that she had told him that she had it, that she was leaving him for good this time, that it was over, that she made an arrangement to go live with her father and that was it, that she was leaving, and that apparently was the last thing she remembered, and I kind of jumped on her.
>
> I said, "Nell, how could you have been beaten up so badly and not remember what happened?"
>
> And she said, "If somebody jumped you from behind, you wouldn't remember what happened either."

The decedent subsequently lapsed into a coma and died on August 19. The autopsy was performed by Dr. Joseph Burton. Dr. Burton testified that the decedent had abrasions, lacerations, and exten-

sive contusions in the area of her arms and face. She had a swollen brain, which is also referred to as a "respirator brain." Although she had no skull fractures, she had hemorrhages at various areas of the brain. Dr. Burton testified that the decedent died of "craniocerebral" or "closed head trauma, which means that she had brain injury without actually having any damage to the vault or the bone around the brain." He also testified that in his opinion the primary and precipitating injury to the decedent's brain was caused by someone striking her in the facial area and head with an object such as a hand or fist, although there were also injuries caused by the decedent's falling down. *Held*:

1. Appellant argues that the trial court erred in admitting the testimony of Ms. Dorsey, the attending nurse, as to the decedent's statements in regard to what had transpired prior to the infliction of the decedent's fatal injuries. The trial court held that these hearsay statements were admissible under the "dying declaration" exception to the hearsay rule. We agree.

"Declarations by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, shall be admissible in evidence in a prosecution for homicide." OCGA § 24-3-6; *Holcomb v. State*, 249 Ga. 658, 660 (292 SE2d 839) (1982); see *Patterson v. State*, 199 Ga. 773 (4) (35 SE2d 504) (1945). Where it was manifestly impossible for the decedent to have known who killed him, an expression of opinion as to who the killer was has been held inadmissible. *Strickland v. State*, 167 Ga. 452 (3) (145 SE 879) (1928). However, the fact that the decedent did not see the assailant does not automatically render the decedent's identification of the accused inadmissible, and "the identity of the killer may include the res gestae of the homicide as part of the cause of death. [Cits.]" *McAllister v. State*, 246 Ga. 246, 249 (1) (271 SE2d 159) (1980).

In this case, the State made a prima facie showing of the admissibility of the complained-of testimony under the "dying declaration" exception to the hearsay rule. Accordingly, the trial court did not err in admitting this evidence.[2] *Holcomb v. State*, supra.

2. Appellant argues that the trial court erred in allowing an in-custody statement made by him to be admitted in evidence, in that he was not provided with a copy of this statement prior to trial pursuant to his request for copies of any statements made by him while in police custody under OCGA § 17-7-210.

OCGA § 17-7-210 provides that at least ten days prior to trial,

---

[2] We note that the statements made by decedent on August 6, upon her admission to the intensive care unit, would be admissible under OCGA § 24-3-3 as declarations "free from all suspicion of device or afterthought." See *Andrews v. State*, 249 Ga. 223 (290 SE2d 71) (1982).

the defendant is entitled to have a copy of oral and written statements made by him while in police custody, and failure of the prosecution to comply with a timely written request shall result in the statement being excluded and suppressed. See *Wallin v. State*, 248 Ga. 29 (5) (279 SE2d 687) (1981).

A police officer testified at trial that during his investigation of the case he had asked the appellant what had happened, and the appellant had responded, "I don't know what happened to her. She fell down some steps." Prior to the police officer's testimony, defense counsel objected. In response, the prosecuting attorney stated that the police officer's name was on the list of state's witnesses and that he, the prosecuting attorney, had orally informed defense counsel that the police officer would testify as to this oral statement of appellant which had not been reduced to writing. Defense counsel then acceded to the admission of the police officer's testimony.

Appellant thus waived this objection. See *Huguley v. State*, 253 Ga. 709 (2) (324 SE2d 729) (1985). In any event, since the statement was not incriminating or inculpatory, the failure of the State to give appellant a copy of this statement prior to trial, pursuant to his request under OCGA § 17-7-210, provides no ground for reversal. See *Furlow v. State*, 172 Ga. App. 185 (2) (322 SE2d 317) (1984).

3. Appellant argues that the State failed to prove beyond a reasonable doubt that conduct on his part was the proximate cause of the decedent's death. We disagree.

> "Where one inflicts an unlawful injury, such injury is to be accounted as the efficient, proximate cause of death, whenever it shall be made to appear, either that (1) the injury itself constituted the sole proximate cause of the death; or that (2) the injury directly and materially contributed to the happening of a subsequent accruing immediate cause of the death. . . ."

*James v. State*, 250 Ga. 655, 656 (300 SE2d 492) (1983); *Wilson v. State*, 190 Ga. 824, 829 (10 SE2d 861) (1940).

The trial court correctly charged the jury on the above-quoted proposition, and in accordance therewith the evidence authorized a rational trier of fact to find beyond a reasonable doubt that the appellant, in the commission of the felony of aggravated assault, proximately caused the victim's death. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

4. Appellant contends that the trial court erred in charging the jury on malice murder, because there was no evidence of malice. We disagree. See *Josey v. State*, 137 Ga. 769 (1) (74 SE 282) (1912). In addition, any error would be harmless, since appellant was found

guilty of felony murder and not malice murder. *Eller v. State*, 183 Ga. App. 724 (4) (360 SE2d 53) (1987).

5. Finally, appellant contends that the trial court erred in failing to charge the jury on lesser included offenses. However, appellant cannot raise this issue, since he failed to file a timely written request that the trial court charge the jury on lesser included offenses. E.g., *Comer v. State*, 247 Ga. 167 (275 SE2d 309) (1981). In fact, defense counsel stated to the trial court that he was "going for broke" and not requesting a charge on lesser included offenses.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 10, 1991.

*Richard L. Moore*, for appellant.

*Thomas J. Charron*, District Attorney, *Debra H. Bernes*, *Nancy I. Jordan*, Assistant District Attorneys, *Michael J. Bowers*, Attorney General, *Mary H. Hines*, for appellee.