S08A0889. ALLEN v. THE STATE.
(667 SE2d 54)

HINES, Justice.

A jury found Willie Germone Allen guilty of malice murder, felony murder while in the commission of aggravated assault, kidnapping, burglary, and possession of a firearm during the commission of a crime in connection with the fatal shootings of Angela Patricia Van Eeden and Ray Anthony Cobb. Allen appeals his convictions, challenging the sufficiency of the evidence, the admission of hearsay testimony, the refusal to admit certain evidence, and the effectiveness of trial counsel. Finding the challenges to be without merit, we affirm.[1]

The evidence construed in favor of the verdicts showed that on

---

[1] The crimes occurred on December 11, 2003. On March 2, 2004, a Richmond County grand jury returned an indictment against Allen, charging him with the malice murder of Van Eeden; the malice murder of Cobb; the felony murder of Van Eeden while in the commission

December 11, 2003, Richmond County police responded to a call indicating a home security alarm had been set off at Van Eeden's home. Upon arriving at the scene, the police found evidence of forced entry into the home, and a violent shooting which resulted in the deaths of Van Eeden and Cobb, with whom Van Eeden was having a romantic relationship. Van Eeden was Allen's ex-girlfriend and the couple had two children, Markell, then age 7, and Marquis, then age 3, who were present at the time of the incident. There was a documented history of abuse by Allen toward Van Eeden, specifically instances of physical abuse and harassment, for which Van Eeden had sought assistance from authorities. Allen had lived with Van Eeden off-and-on during the course of their rocky relationship, but at the time of the home invasion, the locks to the residence had been changed and a security system installed. The residence had also been placed under "house watch" by the police due to prior domestic violence by Allen.

The fatal incident began when Allen broke a window on the rear kitchen door of Van Eeden's home and disengaged the lock. Allen went upstairs to the master bedroom, and then fired three gunshots through the closed door, one of which struck and killed Van Eeden. He then forcibly opened the master bedroom door by completely removing it from the hinges. Cobb was shot in the arm while in the master bedroom, and fled to the children's room; a significant amount of blood and a bullet hole were found in that room. Cobb then exited the house through the front door and Allen pursued him into a neighboring yard. Allen fired several close range shots at Cobb, fatally wounding him. Allen then took both of the minor children from the scene and telephoned his mother late in the evening; Allen told his mother, "I need to bring the children" and "I shot them." The following morning, a female friend of Allen's brought the children to Allen's mother's home. Allen then fled to Florida, where

---

of aggravated assault; the felony murder of Cobb while in the commission of aggravated assault; the kidnapping of Markell Allen; the burglary of Van Eeden's home; possession of a firearm during the commission of a crime, to-wit: the murder of Van Eeden; and possession of a firearm during the commission of a crime, to-wit: the murder of Cobb. On March 22, 2004, the State filed a notice of intent to seek the imposition of the death penalty. Allen was tried before a jury January 26-February 1, 2006, and found guilty of all charges. In the penalty phase of the trial held February 2-3, 2006, the jury found the existence of aggravating circumstances and fixed Allen's punishment for the murders as life imprisonment without the possibility of parole. On February 10, 2006, Allen was sentenced to two consecutive terms of life in prison without the possibility of parole for the malice murders; a consecutive term of twenty years in prison for the burglary; two consecutive terms of five years in prison for the firearm possession counts; and a term of ten years in prison for kidnapping to be served concurrently with the sentence for burglary. The felony murders stood vacated by operation of law. A motion for new trial was filed on March 8, 2006, and it was denied on October 26, 2007. A notice of appeal was filed on November 5, 2007, and the case was docketed in this Court on February 7, 2008. The appeal was submitted for decision on March 31, 2008.

he was arrested. At the time of arrest, the police recovered a pair of boots containing the blood of Van Eeden and a Glock .40 caliber handgun containing Cobb's blood. At trial, Van Eeden's two sisters testified regarding the abusive and violent nature of the relationship between Allen and Van Eeden.

1. Allen contends that the trial court erred in failing to grant directed verdicts of not guilty on the malice murder, kidnapping, and burglary charges because the evidence was insufficient to sustain his convictions. But that is far from the case.

(a) As to the malice murder convictions, Allen argues that there was no evidence that he acted with a "depraved heart" or had the specific intent to kill, i.e., malice, and instead, the evidence suggested that the handgun was brought to the scene by Cobb, that Cobb was the first to shoot, and that there was a struggle over the weapon.

However, both witness credibility and any question of justification are matters for the jury, and the jury was free to reject Allen's version of events; nor did any evidence of a struggle between Allen and Cobb over control of the handgun require that there be a finding of voluntary manslaughter. *Robinson v. State*, 283 Ga. 229, 230 (1) (657 SE2d 822) (2008).

As to the question of intent, there is ample evidence that Allen specifically intended to take the lives of his victims. However,

> a malice murder can be shown not only by evidence that the defendant acted with the deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof, but also by evidence that the defendant acted where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart. In other words, evidence that the defendant acted with implied malice is, for purposes of demonstrating his guilt of the crime of malice murder, no less probative than proof that he acted with a specific intent to kill. Moreover, the malice which is required for murder can be formed in an instant so long as it is present at the time of the act of killing.

*Jackson v. State*, 282 Ga. 668, 671 (653 SE2d 28) (2007).

(b) Regarding the kidnapping of Markell, Allen argues that there was no evidence that he lacked legal authority to remove the children from the scene, nor any evidence that he removed them against their will; instead, the evidence was that he sought a safe place for the children at his mother's home. He also posits that because the mother of the children, Van Eeden, was dead, no one had a right superior to his to take custody or possession of Markell.

The arguments are wholly without merit. "Kidnapping is defined as the abducting or stealing away of any person without lawful authority and holding such person against his will. OCGA § 16-5-40 (a)." *John v. State*, 282 Ga. 792, 795 (6) (653 SE2d 435) (2007). The evidence was that Markell was born to Van Eeden and Allen when they were not married, and that they were never married to each other. Nor was there evidence that Allen legitimated the child. See OCGA § 19-7-22. Consequently, the evidence was that Markell was a child born out of wedlock. OCGA § 19-7-23 (1). A child born out of wedlock who is not legitimated by the father is in the sole custody of the mother, who has all parental power over the child. OCGA §§ 19-7-22; 19-7-25. Therefore, the evidence was that Allen had no right to lawful custody. Also, the facts and circumstances of the bloody and violent incident, parts of which took place in the children's bedroom, support the inference that Markell was taken from the home against his will.

(c) Finally, as to the burglary, Allen urges that the jury could not conclude that he entered Van Eeden's residence without authority; rather, the evidence shows that he was planning on visiting the home that night to pick up his son and to give Van Eeden money for Christmas presents and that he inhabited the home on a regular basis.

On the contrary, the evidence authorized the jury to find beyond a reasonable doubt that Allen did not have authority to enter Van Eeden's residence. Such evidence included that the locks on the home had been changed since Allen had stayed there; that Allen had to break a window in the rear door of the home in order to gain entry; that the security alarm was active and armed when Allen arrived; and that Van Eeden was afraid of Allen and had turned to authorities to prevent him from coming near her or her family. The evidence of Allen's rampage once in the residence also permitted the jury to find that he entered the home with the intent to commit aggravated assault and murder.

The evidence presented at trial was sufficient to enable a rational trier of fact to find Allen guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Consequently, it was not error to deny directed verdicts on the charges. *Simmons v. State*, 282 Ga. 183, 184 (1) (646 SE2d 55) (2007).

2. Allen contends that the trial court erred in allowing into evidence the hearsay testimony of Van Eeden's sisters regarding prior difficulties between Allen and Van Eeden. He claims that the testimony was unreliable because the sisters admittedly disliked him and their testimony was heavily biased, presenting only Van Eeden's side of the story.

However, the testimony of Van Eeden's two sisters regarding prior difficulties was properly allowed. The testimony of third parties about prior difficulties between the defendant and the victim may be admitted into evidence under the necessity exception to the hearsay rule if the testimony is necessary and trustworthy. *Chapel v. State,* 270 Ga. 151, 155 (4) (510 SE2d 802) (1998). Van Eeden's sisters' testimony regarding the problematic and abusive nature of Van Eeden's relationship with Allen was clearly relevant and probative on the question of Allen's culpability for the violent slaying of Van Eeden and her lover, Cobb. As to the question of the reliability of such testimony, the evidence established the sisters' close personal relationships with Van Eeden. They spoke with Van Eeden nearly every day, and Van Eeden confided in them, relating intimate details of her life, including the affair with Cobb. Van Eeden sought her sisters' help in dealing with Allen's violent behavior, and after leaving Allen, she took refuge in one sister's home. Furthermore, the sisters personally witnessed events consistent with the circumstances of domestic violence related by Van Eeden. These factors are the particularized guarantees of trustworthiness required for application of the necessity exception. *Culmer v. State,* 282 Ga. 330, 333 (3) (647 SE2d 30) (2007). As to any bias in the sisters' testimony, Allen had the opportunity to cross-examine the sisters in order to attempt to demonstrate it. Under the totality of the circumstances, the trial court did not abuse its discretion in permitting the testimony. Id. at 331 (2).

3. Allen next contends that the trial court erred in refusing to allow him to introduce as mitigating evidence, the first offender plea[2] of Cobb, in that it would support his assertions of Cobb's possession of the handgun at the crime scene and his active involvement in the fatal incident.

First, the jury's verdicts showed that it rejected any attempt by Allen to portray a justification defense to the shootings. In any event, the record discloses that Allen sought to introduce evidence of the plea in the penalty phase of the trial for the express purpose of attempting to impugn Cobb.[3] In these circumstances, the victim's personal characteristics, including his bad character and criminal record, are not relevant and are not admissible. *Hill v. State,* 263 Ga. 37, 44-45 (16) (427 SE2d 770) (1993).

4. Lastly, Allen contends that he was denied effective assistance of trial counsel because his attorney refused to seek recusal of the

---

[2] See OCGA § 42-8-60 et seq.

[3] Allen's counsel argued that the plea "goes to the question of [Cobb's] integrity, his honesty there is an issue."

trial judge after learning the judge was involved in a temporary protective order against Allen, and because counsel failed to adequately involve him in discovery and trial preparation and participation. But,

> [t]o prevail on a claim of ineffective assistance of trial counsel, appellant must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citation and punctuation omitted.) *Sanders v. State*, 283 Ga. 372, 374 (2) (659 SE2d 376) (2008). Allen fails to carry his burden. He has presented no evidence that recusal of the trial judge was warranted.[4] Nor is there any evidentiary support for Allen's general complaints that trial counsel did not adequately involve him in the pre-trial and trial proceedings. In fact, the evidence at the hearing on the motion for new trial was to the contrary. Indeed, Allen's only specified inadequacy of trial counsel is that counsel removed his notepad and pen during trial. However, at the motion for new trial hearing, trial counsel testified that he did not remember such occurrence, but if it did happen, he would have taken the items away if they were distracting him or the jury. What is more, Allen has failed to demonstrate how the alleged deficiencies would have affected the outcome of his trial. Id.

*Judgments affirmed. All the Justices concur.*

DECIDED SEPTEMBER 22, 2008.

*Barbara B. Claridge*, for appellant.
*Daniel J. Craig*, District Attorney, *Madonna M. Little*, Assistant District Attorney, *Thurbert E. Baker*, Attorney General, *Mary N. Kimmey*, Assistant Attorney General, for appellee.

---

[4] At the hearing on the motion for new trial, Allen merely posed the question whether trial counsel was aware that the trial judge had "been a signatory judge on an ex parte motion or a dismissal of an ex parte motion that involved Mr. Allen and the victim," and trial counsel responded that he did not recall the circumstance but that whether he would have asked for recusal would have depended on "a lot more" than what was then represented.