## S09A0250. SHIELDS v. THE STATE.
### (677 SE2d 100)

HINES, Justice.

A jury found Michael S. Shields guilty of malice murder, felony murder, aggravated assault, aggravated battery, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon, all in connection with the fatal shooting of Denise Hill. Shields challenges his convictions and the denial of a new trial on the grounds that the evidence was insufficient that he caused the victim's death, the trial court erred by giving certain instructions to the jury, and trial counsel rendered ineffective assistance. Finding the challenges to be without merit, we affirm the judgments of conviction and the denial of a new trial.[1]

The evidence construed in favor of the verdicts showed that

---

[1] The crimes occurred on September 23, 2002. On May 22, 2003, a DeKalb County grand jury indicted Shields for malice murder; felony murder while in the commission of aggravated assault; felony murder while in the commission of aggravated battery; felony murder while in the commission of possession of a firearm by a convicted felon; aggravated assault; aggravated battery; possession of a firearm during the commission of a crime; and possession of a firearm by a convicted felon. He was tried before a jury April 11-14, 2005, and found guilty on all counts. On May 19, 2005, Shields was sentenced to life imprisonment for malice murder and a consecutive five years imprisonment for possession of a firearm during the commission of a crime. The felony murder counts stood vacated by operation of law, and the trial court found the remaining counts merged for the purpose of sentencing. Through appellate counsel, Shields filed a motion for new trial on June 17, 2005, an amended motion for new trial on August 14, 2006, and a second amended motion for new trial on August 16, 2006. Also, on August 16, 2006, appellate counsel filed a motion to re-open the evidence in regard to the motion for new trial, as amended. On March 1, 2007, Shields, pro se, filed a "motion to remove counsel appointed." On March 14, 2007, the motion to re-open the evidence was granted, and the motion for new trial, as amended, was denied; however, the order was stayed pending a hearing on the pro se motion. On April 27, 2007, the trial court entered an order granting the motion to remove counsel and to allow defendant to proceed pro se, granting defendant's requests for documents, setting aside the order of March 14, 2007, and granting defendant 30 days to file any additional post-conviction motions or amendments. On May 29, 2007, Shields, pro se, filed a "third (3rd) amended motion for new trial." On June 8, 2007, he, pro se, filed

Shields and Hill were involved in an ongoing romantic relationship that began in 1992 and produced two children. In 2000, however, Hill met a police officer, Lindo, and engaged in a sexual relationship with him. Shields became aware of Hill's relationship with Lindo and was jealous. Hill's friend, Davis, heard Shields threaten the victim on several occasions, telling Hill that he "was going to cut up her face where no man would want her" and that he "would put her in a grave beside her mother." The day before Hill was shot, Shields told Davis that he was "tired" of Hill's relationship with Lindo and "he couldn't take it anymore." He told Davis to warn Hill that he was "going to put a shot in her to burn her whole body."

On September 23, 2002, Shields and Hill argued over her relationship with Lindo. The argument and ensuing violence was witnessed by Hill's nephew, Walker, who resided with her. During the argument, Hill attempted to leave the house, but Shields followed her out the door. Hill returned to the house and Shields entered behind her. Hill retreated to her bedroom. Shields again followed her. The argument continued, and Shields pushed Hill and she fell to the floor. Shields then shot Hill multiple times in the back. Following the shooting, Shields dragged Hill out of the bedroom to show her children that their mother was dead. Hill, however, was still alive. A gunshot wound to Hill's neck injured her spinal cord, resulting in her immediate paralysis; she was quadriplegic.

When police arrived at the house, Shields told them, "I did it." Shields was arrested and interviewed. He explained that he was tired of Hill's affair, and that at some point during the argument, Hill telephoned Lindo and left a voicemail message requesting that he call her back immediately. Shields decided that if Lindo returned Hill's call, he would shoot her. Lindo returned Hill's call. Shields told the police that after Lindo called Hill back, he shot her several times.

Hill lived for approximately six months after the shooting. An autopsy revealed that Hill died as a result of swelling of the brain caused by an intracerebral hemorrhage. The pathologist who performed the autopsy concluded that the most likely cause of the hemorrhage was the anticoagulant drug Coumadin, which Hill was taking to treat deep vein thrombosis, a dangerous condition in which there are blood clots in the lower extremities of the body. The thrombosis occurred as a result of the immobilization caused by

a notice of appeal to the Court of Appeals of Georgia from the order of April 27, 2007. The Court of Appeals transferred the appeal to this Court on July 2, 2007. On September 25, 2007, this Court dismissed the appeal. On August 11, 2008, the trial court entered an "order granting defendant's motion to re-open evidence on defendant's motion for new trial and denying defendant's motion for new trial and all amendments thereto." A notice of appeal was filed on September 8, 2008, and the case was docketed in this Court on October 24, 2008. The appeal was argued orally on February 10, 2009.

Hill's paralysis. The pathologist testified that if Hill had not been shot, she would not have been paralyzed, would not have developed the deep vein thrombosis, would not have needed the Coumadin, and thus, would not have suffered the intracerebral hemorrhage that killed her.

1. Shields contends that the State's evidence was insufficient to support the murder verdicts because it did not establish with certainty that his actions caused the brain hemorrhage which led to the victim's death. He argues that the State relied on medical evidence which was circumstantial, which could not exclude other reasonable hypotheses, such as an unexplained hemorrhage that was unrelated to the gunshot wounds, and therefore, that there was a reasonable hypothesis of innocence. But, such argument is unavailing.

Certainly, the cause of death in a homicide case may be proven by circumstantial evidence. *Sorrells v. State*, 267 Ga. 236, 238 (1) (a) (476 SE2d 571) (1996). However, contrary to Shields' contention, the pathologist's testimony about the autopsy findings and his opinion regarding the cause of the victim's death constituted direct, not circumstantial, evidence. *Kirk v. State*, 289 Ga. App. 125, 126 (656 SE2d 251) (2008); see also *Jones v. State*, 243 Ga. 584, 585 (1) (255 SE2d 702) (1979). The trial court in this case charged the jury on circumstantial evidence as well as direct evidence, and correctly instructed it that to warrant a conviction based upon circumstantial evidence, the proven facts must not only be consistent with the hypothesis of guilt, but also must exclude every other *reasonable* theory save that of the guilt of the accused. *Smith v. State*, 284 Ga. 304, 306 (2) (667 SE2d 65) (2008). Whether every reasonable hypothesis except that of the guilt of the defendant has been excluded is a question for the jury. *Lindsey v. State*, 271 Ga. 657, 658 (1) (522 SE2d 459) (1999). This is so because "the factfinder has heard the witnesses and observed them testify," and therefore, "is considered more capable of determining the reasonableness of the hypothesis produced by the evidence or lack thereof than is an appellate court." (Footnote omitted.) *Boyd v. State*, 291 Ga. App. 528, 530 (662 SE2d 295) (2008). Here, the jury resolved the issue of causation of the victim's death adversely to Shields, and understandably so. The only cause of the victim's death supported by the evidence was that it was the result of an intracerebral hemorrhage caused by the anticoagulant drug Coumadin. The pathologist testified that intracerebral hemorrhages such as the one that resulted in the victim's death are "commonly well known to be associated with anticoagulation [medication]." The defense extensively questioned the pathologist about other possible causes of the brain hemorrhage, and the pathologist rejected each as unlikely. While the pathologist

acknowledged that it was "possible" that the hemorrhage was caused by something other than the Coumadin, he found no medical evidence to support such possibilities. Even if the evidence of causation was circumstantial, the jury was authorized to reject as unreasonable possibilities which were only theoretical, as those now offered by Shields. *Walker v. State*, 282 Ga. 406, 408 (1) (651 SE2d 12) (2007).

The evidence was sufficient to enable a rational trier of fact to find Shields guilty beyond a reasonable doubt of malice murder and the related crimes. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Shields contends that the trial court committed reversible error regarding his conviction for malice murder[2] when it charged the jury:

> And if a person of sound mind and discretion intentionally and without justification uses a deadly weapon or instrumentality in the manner in which the weapon or instrumentality is ordinarily used and thereby causes the death of a human being, you may infer the intent to kill. Whether or not you make any such inference is a matter solely within the discretion of the jury.

He argues that the charge was harmful to him because there was direct and circumstantial evidence that he intended only to seriously injure, but not kill, the victim. But, the argument is unavailing. While the giving of this charge was error, see *Harris v. State*, 273 Ga. 608, 609-610 (543 SE2d 716) (2001), the evidence of Shields's intent to kill the victim, i.e., malice, was overwhelming; therefore, it is highly probable that it did not contribute to the verdict. *Flanders v. State*, 279 Ga. 35, 40 (8) (609 SE2d 346) (2005).

3. Shields next contends that the trial court erred by charging the jury that,

> [t]o kill another person for past acts of adulterous behavior or to prevent apparent commission or the completion of adulterous behavior between them, nothing else appearing is murder

without also giving the jury the language which follows from the pattern charge, that reiterates that adultery can amount to provo-

---

[2] Shields concedes that the remaining charges did not require any finding of an intent to kill, and therefore, were not affected by this jury instruction.

cation.[3] He argues that such omission misled the jury by implying that adultery can never provide the necessary provocation to mitigate a killing from murder to manslaughter.

On the contrary, the charge as given "[left] the door open for the jury to consider whether such killing was committed in circumstances which would constitute voluntary manslaughter." *Ricketts v. State*, 276 Ga. 466, 472-473 (6) (579 SE2d 205) (2003). Moreover, the instruction must be considered in the context of the totality of the court's charge.[4] Id. In the context of the court's charge as a whole, the instruction in no way misled the jury or hindered Shields's ability to attempt a defense of voluntary manslaughter. Id.

4. Lastly, Shields contends that his trial counsel was ineffective because he did not request a jury charge that would have clearly informed the jury that adultery can constitute legal provocation. He urges that it was possible that his defense would have been stronger with such an instruction, and that the failure to obtain it was prejudicial because there is a reasonable probability that the jury believed his voluntary manslaughter argument was barred as a matter of law, and that the jury would have found sufficient provocation to reduce the homicide from murder to voluntary manslaughter. But, that is hardly the case.

In order

> [t]o prevail on a claim of ineffective assistance of trial counsel, appellant must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been

---

[3] The language at issue is from Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 2.10.13 (4th ed. 2007):

You may consider whether adultery amounts to provocation, which would mitigate the killing. If the evidence shows that the defendant killed the alleged victim(s) without malice and not in a spirit of revenge but under a violent, sudden impulse of passion created in the defendant's mind by ongoing adultery or the recent discovery of past adultery on the part of the victim(s), you would be authorized to consider whether or not the defendant is guilty of voluntary manslaughter as I will define it. What circumstances will present a situation so as to excite such passion is a matter for the jury to decide. As always, the State has the burden of proving guilt beyond a reasonable doubt. As between murder and voluntary manslaughter, the State has that same burden of proving that the killing is not mitigated to voluntary manslaughter.

[4] Immediately, following the charge at issue, the trial court instructed the jury:

Any killing in a spirit of revenge for a past completed wrong, however heinous, cannot be justified. However, if shown by the evidence that the killing was done by the defendant without malice and not in a spirit of revenge, but under a violent, sudden impulse of passion created in the mind of the person by the circumstances surrounding the transaction, you would be authorized to consider whether or not the defendant is guilty of voluntary manslaughter, as I will define it.

different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citation and punctuation omitted.) *Allen v. State*, 284 Ga. 310, 315 (4) (667 SE2d 54) (2008). As noted, the trial court's instruction to the jury plainly permitted the jury to consider whether Shields killed the victim under circumstances which would constitute voluntary manslaughter. See Division 3, supra. Consequently, trial counsel's failure to request additional instruction in that regard "cannot constitute the deficient performance necessary to satisfy the first prong of the ineffective assistance of counsel test." *Miller v. State*, 283 Ga. 412, 416 (4) (b) (658 SE2d 765) (2008). Moreover, Shields cannot show a reasonable probability that the outcome of his trial would have been different had his attorney requested it. Id. The evidence that Shields acted with malice was overwhelming. See Division 2, supra.

*Judgments affirmed. All the Justices concur, except Sears, C. J., and Carley, J., who concur in part and dissent in part, and Hunstein, P. J., who dissents.*

CARLEY, Justice, concurring in part and dissenting in part.
I concur in Divisions 1 and 2 of the majority opinion. However, I dissent to Divisions 3 and 4 of that opinion and to the affirmance of the judgment of the trial court. Furthermore, I join Division 1 of Presiding Justice Hunstein's dissenting opinion.
I am authorized to state that Chief Justice Sears joins in this opinion.

HUNSTEIN, Presiding Justice, dissenting.
Because I believe that the trial court erred in its charge to the jury regarding the effect of the victim's infidelity on Shields' state of mind at the time of the shooting,[5] I must respectfully dissent.
1. In *Ricketts v. State*, 276 Ga. 466 (579 SE2d 205) (2003), this Court upheld the use of a jury instruction on adultery almost verbatim to that given here. The charge given in *Ricketts* was modeled after the Suggested Pattern Jury Instructions in effect at that time, which stated, in pertinent part:

To kill either a spouse or the spouse's lover for past acts of adultery or to prevent the apparent commission or the

---

[5] Though the victim and Shields were never married, "adulterous conduct can be the provocation sufficient to warrant a conviction for manslaughter . . . even if the defendant and the victim are not married." (Citations omitted.) *Culmer v. State*, 282 Ga. 330, 335 (4) (647 SE2d 30) (2007).

completion of an act of adultery in progress between them, nothing else appearing, is murder.

Suggested Pattern Jury Instructions, Criminal Cases, § 4 (B) (3) (2d ed. 1991). Three members of the *Ricketts* court, while concurring in the judgment, wrote separately to admonish that "the jury instruction on adultery in murder cases needs to be replaced." Id. at 475 (Fletcher, C. J., concurring specially, joined by Sears, P. J., and Carley, J.). This was so, the concurring Justices argued, because the charge

> fails to fully apprise the jury of the law of this State that adulterous conduct can serve as sufficient provocation to reduce homicide from murder to voluntary manslaughter. This jury charge relies upon a vague statement "nothing else appearing" to substitute for the principle that a jury may convict on the lesser offense of manslaughter if it finds that the defendant acted solely as the result of a serious provocation that excites a sudden, violent, and irresistible passion.

(Footnotes omitted.) Id. In other words, the charge fails to make clear to the jury that adulterous conduct may itself constitute sufficient provocation to downgrade a killing to voluntary manslaughter.

In recognition of the validity of this point, the drafters of the Suggested Pattern Jury Instructions thereafter deleted the "nothing else appearing" language from the pattern charge and added language specifically stating that "[y]ou may consider whether adultery amounts to provocation, which would mitigate the killing." Suggested Pattern Jury Instructions, Criminal Cases, § 2.10.13 (4th ed. 2007).[6] This change in the pattern charge reflects a consensus view among trial judges in this State that an adultery charge is incomplete and potentially misleading when it fails to make explicit the notion that adultery may constitute provocation sufficient to mitigate a killing. It is time for this Court to expressly adopt this position as well.

Accordingly, because the charge given was susceptible to the erroneous interpretation that adultery could not form the basis for a finding of provocation sufficient to mitigate the killing, and because there was ample evidence that the killing was committed "as the result of a sudden, violent, and irresistible passion" inflamed by the

---

[6] This change appeared first in the Third Edition of the Suggested Pattern Jury Instructions, published prior to Shields' 2005 trial. See Suggested Pattern Jury Instructions, § 2.03.13 (3d ed. 2003).

victim's adulterous conduct, OCGA § 16-5-2 (a), I would reverse Shields' murder conviction. See *Strickland v. State*, 257 Ga. 230 (2) (357 SE2d 85) (1987) (reversing murder conviction due to erroneous jury charge on effect of adultery).

2. In addition, I write to note my disagreement with the majority's analysis in Division 1. I concur fully in the majority's conclusion that there was sufficient evidence to support the jury's finding that the shooting was the cause of the victim's death. However, I believe the appropriate analysis centers not on whether the medical evidence was direct versus circumstantial but rather whether the evidence supported the finding of proximate causation:

> "Where one inflicts an unlawful injury, such injury is to be accounted as the efficient, proximate cause of death, whenever it shall be made to appear, either that (1) the injury itself constituted the sole proximate cause of the death; or that (2) the injury directly and materially contributed to the happening of a subsequent accruing immediate cause of the death; or that (3) the injury materially accelerated the death, although proximately occasioned by a pre-existing cause."

(Citation omitted.) *James v. State*, 250 Ga. 655, 656 (300 SE2d 492) (1983). Accord *Phillips v. State*, 260 Ga. 742 (3) (399 SE2d 202) (1991). The testimony of the pathologist, as recounted in Division 1, was more than sufficient to support a finding that the shooting directly and materially contributed to the intracerebral hemorrhage that caused the victim's death. In my view, no further analysis or discussion of this issue is necessary.

I am authorized to state that Chief Justice Sears and Justice Carley join in Division 1 of this dissent.

DECIDED MAY 4, 2009.

*Gerard B. Kleinrock*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Barbara B. Conroy, Leonora Grant, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Amy E. Hawkins Morelli, Assistant Attorney General*, for appellee.