301 Ga. 737
FINAL COPY

S17A0886. PAYNE v. THE STATE.

Boggs, Justice.

Appellant Marcus Payne was tried before a jury and found guilty of malice murder, felony murder, criminal attempt to commit murder, aggravated assault with a deadly weapon, aggravated assault, aggravated battery, possession of a firearm during the commission of a felony, and criminal trespass, in the shooting of his estranged wife, Brandi Payne, and her companion, Evan Campbell.[1] He now appeals, asserting that the trial court erred in refusing to give his requested

---

[1] The crimes occurred in April 2014. On July 15, 2014, a Fulton County grand jury indicted Payne on charges of malice murder, felony murder, criminal attempt to commit murder, aggravated assault with a deadly weapon, aggravated assault, aggravated battery, criminal damage to property in the second degree (two counts), possession of a firearm during the commission of a felony, and criminal trespass. Following an April 2015 jury trial, the trial court granted Payne a directed verdict of acquittal on the criminal damage to property counts, and the jury found him guilty of the remaining charges. He was sentenced to life in prison plus 26 years; the trial court merged the criminal attempt and aggravated assault charges. The felony murder count was vacated by operation of law. See Malcolm v. State, 263 Ga. 369, 372-373 (5) (434 SE2d 479) (1993). Payne's motion for new trial was filed on May 13, 2015, and denied on May 31, 2016. He filed a motion for an out-of-time appeal on August 26, 2016, which was granted on September 20, 2016. Payne's notice of appeal was filed on September 27, 2016. This case was docketed in this Court for the term beginning April 2017 and submitted for a decision on the briefs.

jury instructions. We discern no error and affirm.

1. Viewed in the light most favorable to the verdict, the evidence showed that Payne and his wife Brandi were married in 2003 while Payne was on leave from the Navy, and that they later had two children. Payne and Brandi had a tumultuous marriage that at times involved "infidelity on both parts," and had separated but were living in the same home in separate bedrooms. Brandi testified that she and Payne did not get divorced because "it was easier financially for everybody." She was aware that Payne was in a romantic relationship with another woman, who testified at trial that Payne had told her that he and his wife were separated, but living together for financial reasons.

On April 16, 2014, Brandi told Payne that she was leaving the house for the night, but would return the next morning. Campbell picked Brandi up a block from the home because she did not want to "introduce any type of situation that could possibly be volatile at all with my children at home." Brandi and Campbell drove to a convenience store where she purchased some items, and as she exited the store, Payne approached her with his gun drawn. He told Brandi, "Oh, so this is what it is?," to which Brandi responded, "Marcus, what are you doing?" Payne began firing his gun at Brandi and then at Campbell who

2

was sitting in the driver's seat of the car. When Brandi ran, Payne chased her and continued to shoot at her. She was struck by five bullets in the stomach and arm, and grazed by a sixth bullet. Brandi was able to stop a motorist who drove her to a fire station for first aid. Payne fired multiple shots at Campbell as he attempted to get out of the car. Bullets struck him in the torso, neck, arm and hands. Campbell died from his wounds, but Brandi survived and testified at trial.

After the shooting, Payne threw the gun away, called Brandi's mother to come and take care of the children, and told his girlfriend that he "got into an altercation" with "his wife and her boyfriend" and shot both of them. He testified at trial that as Brandi walked out of the convenience store, she said, "Oh, you going to shoot me? You going to shoot me?" Payne explained: "Then, I stopped and then I realized, okay. Well, yeah, I do have my pistol in my hand because I hadn't put it in the holster or whatever." He explained further that Brandi was yelling at him and pushing him when he heard a gunshot, and that he then just "started shooting. I leaned into the car, I shot [Campbell]. I shot at him I know at least two or three times. I heard him say something and he tried to get out of the car. I mean, it was two on one. I was afraid." Payne stated that he assumed that Brandi's relationship with Campbell was a sexual one and that

3

it frustrated him and "pissed [him] off severely," and that when Brandi "got loud. She was like, oh, you going to shoot me? . . . Yeah, that infuriated me. That pissed me off." He explained that he "didn't know why" he was shooting at Brandi and Campbell at the time, but that he was "angry, scared, nervous." Payne explained further that he and Brandi had had arguments during which he accused her of having a romantic relationship with Campbell, but that Brandi insisted that she and Campbell were only friends.

Payne does not challenge the sufficiency of the evidence. Nevertheless, as is this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Payne guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); see also Vega v. State, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) (jury determines credibility of witnesses and resolves any conflicts or inconsistencies in evidence).

2. Payne contends that the trial court erred in refusing to give his requested charges "which explained the relationship between adultery and

4

provocation as that term relates to voluntary manslaughter as a lesser included offense to murder." Specifically, he argues that the court's failure to give his requested jury charges #6 through #9 was "erroneous and harmful."[2] The trial court declined to give the requested instructions and instead gave the pattern charges on adultery. "A requested charge must be legal, apt and precisely adjusted to some principle involved in the case and be authorized by the

[2] Payne requested the following charges:

Words alone do not amount to the sort of provocation necessary to reduce a murder to manslaughter. However, words that disclose the adulterous conduct of a spouse are not just words, at least to the extent that they cause the accused to genuinely and reasonably believe that his spouse has been unfaithful. The discovery that the spouse has been unfaithful — whether the accused sees evidence of the infidelity or hears about it from the unfaithful spouse or another — can amount to sufficient provocation to reduce murder to manslaughter. [Request #6]

The fact that Marcus Payne may have known for some time that his wife, Brandi Payne, had been unfaithful to him does not negate, as a matter of law, his claim that he was provoked to a sudden, violent, and irresistible passion by his wife's infidelity. This is a circumstance that you should consider along with all the other evidence in this case in deciding whether Marcus Payne is guilty of murder or voluntary manslaughter. [Request #7]

The fact that Marcus Payne was also in an adulterous relationship with Aquarius Jones does not negate, as a matter of law, his claim that he was provoked to a sudden, violent and irresistible passion by his wife's infidelity. This is a circumstance that the jury should consider along with all the other evidence in deciding whether Marcus Payne is guilty of murder or voluntary manslaughter. [Request #8]

Adulterous conduct can be the provocation sufficient to warrant a conviction for manslaughter. [Request #9]

5

evidence." (Citations and punctuation omitted.) <u>Gardner v. State</u>, 273 Ga. 809, 813 (6) (546 SE2d 490) (2001). Moreover, "[i]t is not reversible error to fail to charge in the exact language requested when the charge given adequately covers the correct legal principles." (Citation and punctuation omitted.) <u>Johnson v. State</u>, 276 Ga. 57, 60 (3) (573 SE2d 362) (2002).

The court instructed the jury as follows:

> To kill either a spouse or the spouse's lover for past acts of adultery or to prevent the apparent commission or the completion of an act of adultery in progress between them is not justified. You may consider whether adultery amounts to provocation, which would mitigate the killing. If the evidence shows that the defendant killed the alleged victim - - killed the alleged victim without malice and not in a spirit of revenge but under a violent, sudden impulse of passion created in the defendant's mind by ongoing adultery or the recent discovery of past adultery on the part of the victim, you would be authorized to consider whether or not the defendant is guilty of voluntary manslaughter as I will define.
>
> A person commits voluntary manslaughter when that person causes the death of another human being under circumstances that otherwise would be murder if that person acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. If there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, which the jury in all cases shall decide, the killing may be attributed to revenge and be punished as murder.
>
> In this connection, I charge you that the burden of proof is upon the State to prove beyond a reasonable doubt that the offense is not so mitigated.

What circumstances will present a situation so as to excite such passion is a matter for you to decide. As always, the State has the burden of proving guilt beyond a reasonable doubt. As between murder and voluntary manslaughter, the State has that same burden of proving that the killing is not mitigated to voluntary manslaughter.

See Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 2.10.13 (Adultery).

Payne argues that he was guilty of voluntary manslaughter based on Brandi's words and his own observation of her adulterous conduct, and that he is therefore entitled to a charge explaining this theory. In reliance on a dissenting opinion in Shields v. State, 285 Ga. 372, 377 (677 SE2d 100) (2009), he contends that the trial court's instruction was incomplete because it did not make clear to the jury that adulterous conduct may itself constitute provocation to downgrade a killing to voluntary manslaughter. But the charge given here is the same charge suggested by the dissent in Shields, is a nearly verbatim recitation of the pattern jury instruction, and, contrary to Payne's argument here, informs the jury that it may consider whether adultery amounts to provocation which would mitigate the killing and authorizes the jury to consider whether Payne was guilty of voluntary manslaughter rather than murder.

Assuming Payne was entitled to a jury instruction on adultery, the trial court's instruction covered the correct legal principles. Payne has shown no error in the court's refusal to give his requested instructions. His claim of error on appeal therefore fails.

Judgment affirmed. All the Justices concur.

Decided August 14, 2017.

Murder. Fulton Superior Court. Before Judge Goger.

Mark A. Yuracheck, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Arthur C. Walton, Lyndsey H. Rudder, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, S. Taylor Johnston, Assistant Attorney General, for appellee.