## S06A1478. THOMASON v. THE STATE.
(637 SE2d 639)

MELTON, Justice.

Robert Gene Thomason appeals his convictions for murder, aggravated battery, and possession of a firearm during the commission of a crime with regard to the shooting death of his wife.[1] For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict, the record shows that Thomason's estranged wife, Deborah, returned to her

---

[10] See OCGA § 17-16-6; *Ehle v. State*, 275 Ga. 560, 564 (570 SE2d 284) (2002).

[11] See *Marks v. State*, 280 Ga. 70, 75 (623 SE2d 504) (2005).

[1] Thomason was indicted in Stephens County on May 3, 2004 and charged with malice murder, four counts of aggravated battery, and possession of a firearm during the commission of a felony. The State sought the death penalty. The jury found Thomason guilty on all counts, and, after finding aggravating circumstances existed for the murder, OCGA § 17-10-30 (b) (2), the jury fixed Thomason's sentence at life without parole. On November 11, 2005, the trial court sentenced Thomason to life without parole for murder, 20 years consecutive to the murder conviction for the first count of aggravated battery, 20 years concurrent to the conviction for the first count of aggravated battery for each of the remaining three counts of aggravated battery, and five years consecutive to the conviction for aggravated battery for possession of a firearm during the commission of a felony. Thomason's motion for new trial, which was filed on November 23, 2005, and amended on February 22, 2006, was denied on March 13, 2006. His timely notice of appeal, filed on March 23, 2006, was docketed on May 5, 2006 and submitted for decision on the briefs.

home on the morning of October 12, 2003. At the time, Deborah was seeking a divorce from Thomason, and Thomason previously had threatened to kill her if she filed for divorce. As Deborah walked to her house, Thomason shot her eight times with an AK-47 assault rifle, and Deborah subsequently fell dead in her neighbor's yard. At and around the crime scene, investigators recovered AK-47 shell casings, a blanket Thomason admittedly used to cover his AK-47 rifle, and several pieces of camouflage cloth. In woods located approximately ten miles from the crime scene, investigators found Thomason's car, a bag of Thomason's personal items, some of which had his name written on them, and Thomason's AK-47 rifle and ammunition. Camouflage cloth matching that found at the crime scene was later found in Thomason's home along with more AK-47 ammunition. Thomason, who had been hiding in the woods, turned himself in to police on October 13, 2003. Thomason later admitted to being at his wife's home on the night of the murder and to firing his AK-47 many times at what he described as an unknown assailant who shot at him first.

1. This evidence was sufficient to enable a rational trier of fact to find Thomason guilty of the crimes for which he was charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Griffin v. State*, 280 Ga. 683 (631 SE2d 671) (2006) (evidence sufficient to find existence of aggravating circumstances under OCGA § 17-10-30 (b)). Accordingly, the trial court did not err by denying Thomason's motion for a directed verdict of acquittal. Nonetheless, Thomason argues that he should not have been convicted of aggravated battery. He argues that, of the eight wounds suffered by the victim, only one was fatal. He further contends that the fatal wound could have been delivered first, killing the victim instantly, and the remaining wounds on which the aggravated battery charge were based could have been inflicted after death. While it is true that one cannot suffer an aggravated battery from wounds inflicted after death, see, e.g., *Miller v. State*, 275 Ga. 730 (571 SE2d 788) (2002), there is some evidence in this case supporting an inference that the victim's first wound was non-fatal, as she managed to flee a short distance into her neighbor's yard before succumbing to the gunfire. Therefore, the trial court was not required to grant Thomason's motion for a directed verdict on this crime, and, for the same reason, the trial court did not err by allowing the jury to consider the crime of aggravated battery as an aggravating circumstance of the murder. OCGA § 17-10-30 (b) (2), (7).

2. In several enumerations, Thomason attacks the constitutionality of the statutory and procedural scheme for the imposition of the death penalty in Georgia. All of these arguments are moot, however,

because Thomason was sentenced to life imprisonment, not death. See *Jackson v. State*, 270 Ga. 494 (11) (512 SE2d 241) (1999).

3. Thomason contends that the trial court erred by denying his request for a number of peremptory strikes in addition to those allowed by statute. In a death penalty case, the State and the defendant may each exercise 15 peremptory strikes. OCGA § 15-12-165. The trial court did not err by refusing to grant Thomason additional strikes. *Frazier v. State*, 257 Ga. 690 (10) (362 SE2d 351) (1987).

4. Thomason contends that OCGA § 16-5-1, which defines the crime of murder, is unconstitutional. This Court, however, has previously determined that this statute is constitutional. *Speed v. State*, 270 Ga. 688 (48) (512 SE2d 896) (1999).

5. Thomason contends that portions of the Unified Appeal Procedure are unconstitutional because they interfere with the attorney-client relationship. We have previously held, however, that "[t]he Unified Appeal Procedure is not unconstitutional. It was designed for the benefit, not the detriment of a defendant, and it does not interfere with the attorney-client relationship." (Citations omitted.) *Jackson v. State*, 270 Ga. 494, 498-499 (10) (512 SE2d 241) (1999). See also *Rogers v. State*, 256 Ga. 139 (13) (344 SE2d 644) (1986).

6. Thomason contends that the trial court erred by denying his motion to shuffle the jury venire, relying on law from other jurisdictions. Nothing under Georgia law, however, requires a shuffling of the jury venire. See OCGA § 15-12-160 et seq. Therefore, it cannot be said that the trial court erred by denying Thomason's request to do so.

7. Citing *Apprendi v. New Jersey*, 530 U. S. 466 (120 SC 2348, 147 LE2d 435) (2000) and *Ring v. Arizona*, 536 U. S. 584 (122 SC 2428, 153 LE2d 556) (2002), Thomason, who admits to receiving notice of the statutory aggravators underlying the State's request for the death penalty in response to one of his motions requesting this information, argues that the trial court erred by denying his motion to quash the indictment because it did not contain these statutory aggravators on its face. This Court has previously addressed this contention and found that the State is not required to list the statutory aggravators in the indictment. See *Walker v. State*, 281 Ga. 157 (635 SE2d 740) (2006); *Terrell v. State*, 276 Ga. 34 (5) (572 SE2d 595) (2002).

8. Thomason contends that the trial court erred by including the names of the grand jurors when it read the indictment to the jury. Although the trial court is not required by law to read the names of the grand jurors, it is not error to do so when the trial court properly instructs the jury that the indictment does not constitute any evidence of guilt. *Strong v. State*, 232 Ga. 294 (206 SE2d 461) (1974); *Hawkins v. State*, 260 Ga. 138 (4) (b) (390 SE2d 836) (1990).

9. Thomason argues that the trial court erred by denying his motion to declare as unconstitutional the statute allowing victim impact evidence during sentencing, OCGA § 17-10-1.2. As Thomason concedes, however, this Court has previously addressed his arguments and has found OCGA § 17-10-1.2 to be constitutional. See *Livingston v. State*, 264 Ga. 402 (1) (444 SE2d 748) (1994).

10. Thomason argues that the trial court erred by improperly seating six jurors who he alleges were either biased against him or predisposed in favor of the death penalty. As a general rule, a trial court in a death penalty case does not abuse its discretion for declining to strike a juror for cause if there is no evidence that (1) the juror holds a fixed opinion as to the defendant's guilt such that the juror could not decide the case based on the evidence and the court's charge and (2) the juror refused to give full consideration to the three available sentencing options available when the State seeks the death penalty. *Buttram v. State*, 280 Ga. 595 (3) (631 SE2d 642) (2006).

(a) Juror Morrison: Juror Morrison testified that she was acquainted with members of the victim's family and that, approximately ten years earlier, she worked at the same plant as the victim's mother. Following the murder, Juror Morrison visited the home of the victim's mother to pay her respects, but she did not discuss any aspects of the murder. She further stated that, other than this visit, she had not been to the home of the victim's mother. Juror Morrison then testified that, despite her acquaintance with the victim's family, she could act impartially, listen to the evidence, and decide the case based upon the facts and arguments placed before her.

> Jurors need only be excused for cause based on their relationship to a victim when it appears that they cannot or will not put aside the relationship with the victim and render impartial verdicts based solely on the evidence. This is a mixed question of law and fact, and a trial court's findings regarding a juror's ability to put aside his or her relationship with the victim will be reversed only if they appear to be an abuse of discretion.

(Citations and punctuation omitted.) *King v. State*, 273 Ga. 258, 270 (23) (539 SE2d 783) (2000). Based on Juror Morrison's testimony that her relationship with the victim's mother would not affect her ability to reach an impartial decision, the trial court did not abuse its discretion in refusing to strike her from the jury.

(b) Juror Garrison: Thomason argues that Juror Garrison should not have been seated because she went to church with one of the victim's family members and was generally biased against him. Juror

Garrison stated, however, that her acquaintance with a family member of the victim would have no bearing on her consideration of the case and that she would base her decisions solely on the evidence placed before her at trial. The trial court did not err by seating Juror Garrison. Id.

(c) Jurors Mackey, Plaistead, Jarrett, and Smith: Thomason contends that each one of these jurors expressed an inappropriate preference for imposition of the death penalty. The record shows, however, that each of these jurors testified that he or she could fairly consider all possible punishments for the crime, not just the death penalty. *Buttram*, supra.

11. Thomason contends that the trial court erred by admitting photographs of the victim's body after it had been taken to the crime lab. Thomason contends that the photographs were unduly inflammatory and gruesome. The photographs in question, however, showed the location, nature, and extent of the victim's multiple gunshot wounds. As such, the photographs were material, relevant, and admissible. *Crozier v. State*, 263 Ga. 866 (2) (440 SE2d 635) (1994).

12. Thomason argues that the trial court erred by allowing the victim's mother, Eva Massey, to testify that the victim told her that Thomason had threatened to kill her if she sought a divorce. Specifically, Thomason contends that the victim's statement is hearsay which does not qualify for admission under the necessity exception to the rule against hearsay. Hearsay may be admissible under the necessity exception if it satisfies the prerequisites of necessity and trustworthiness. *Ward v. State*, 271 Ga. 648, 651 (2) (520 SE2d 205) (1999). Necessity is satisfied when the declarant is unavailable, the statement is relevant to a material fact, and the statement is more probative of that fact than other evidence which may be offered. Id. A statement may be considered trustworthy if, under the totality of the circumstances, it is "coupled with circumstances which attribute verity to it." Id. Whether a statement is trustworthy is a matter for the trial court's discretion. *Myers v. State*, 275 Ga. 709 (2) (572 SE2d 606) (2002). In this case, the victim was the declarant, and she was unavailable because she had been murdered. Her statement was uniquely relevant to show Thomason's motive, intent, and bent of mind, and it was trustworthy because the victim made the statement while confiding in her mother. See *Ward*, supra, 271 Ga. at 650 (2) (uncontradicted statements made to one in whom the deceased declarant placed great confidence and to whom the declarant turned for help deemed admissible under the necessity exception). The statement in this case was properly admitted.

13. Following her testimony, the victim's mother pointed at Thomason as she left the witness stand and asked, "Why did you do it?" Following this outburst, Thomason made a motion for a mistrial

which the trial court denied. Instead, the trial court gave the jury a curative instruction, telling the jury that they should give no consideration to the witness' improper statements.

> Measures to be taken as a result of demonstrations and outbursts which occur during the course of a trial are matters within the trial court's discretion unless a new trial is necessary to insure a fair trial. Where the trial court fails to act to stop a disturbance, or fails to instruct the jury to disregard it, and the demonstration will prevent the defendant from receiving a fair trial, the court must grant a new trial.

*Byrd v. State*, 262 Ga. 426, 427 (1) (420 SE2d 748) (1992). Given the trial court's "prompt, thorough, and curative action," id., the trial court did not abuse its discretion by denying Thomason's motion for a mistrial. Id. Moreover, the record shows that Thomason acquiesced in the trial court's decision to give curative instructions, and he did not renew his motion for a mistrial after they were given. As such, he waived this issue for purposes of appeal. See *Fincher v. State*, 276 Ga. 480 (3) (578 SE2d 102) (2003).

14. Thomason argues that the trial court erred by failing to give his requested jury instruction regarding voluntary manslaughter. Thomason contends that the jury could have inferred that he "snapped" emotionally and killed the victim in the heat of passion, despite his own testimony to the contrary that the shooting was an accident. In this case, the trial court properly found that no evidence supported Thomason's requested charge and refused to give it. *Rowland v. State*, 257 Ga. 25 (3) (354 SE2d 145) (1987); *Denson v. State*, 253 Ga. 93 (1) (316 SE2d 469) (1984).

15. Thomason contends that the trial court erred by denying his motion for a change of venue. Thomason maintains that, due to the publicity received by the crime, he could not have received a fair trial in the county where he was tried. "A trial court must order a change of venue in a death penalty case when a defendant can make a 'substantive showing of the likelihood of prejudice by reason of extensive publicity.' [Cit.]" *Barnes v. State*, 269 Ga. 345, 347 (2) (496 SE2d 674) (1998). To support his claim, Thomason must prove that his trial setting was inherently prejudicial due to pretrial publicity or that there was actual bias on the part of individual jurors. *Perkinson v. State*, 279 Ga. 232 (5) (610 SE2d 533) (2005); *Gissendaner v. State*, 272 Ga. 704 (2) (532 SE2d 677) (2000). To determine whether a trial setting is inherently prejudicial, courts consider the size of the community, the extent of the media coverage, and the nature of the media coverage. *Barnes*, supra. In this case, the trial court reviewed

the media coverage of the case at hand and properly determined that it would not affect the jurors' ability to remain impartial.

16. Thomason contends that the trial court erred by denying his pro se motion for recusal of the trial judge and the prosecutor. Thomason's motion, however, was deficient. It was neither verified nor accompanied with the affidavits required by USCR 25.1. Moreover, Thomason's motion contained only his unverified speculation that the trial judge would be biased against him. The trial court did not err in denying this motion. *Cargill v. State*, 255 Ga. 616 (2) (340 SE2d 891) (1986).

17. Thomason argues that the trial court erred by excusing jurors who expressed a conscientious objection to the death penalty. To the extent that this contention is not rendered moot because Thomason did not receive the death penalty, it nonetheless lacks merit. A trial court does not abuse its discretion by excusing jurors in a death penalty case who indicate that they are wholly opposed to the death penalty under any circumstances. See *Speed*, supra; see also *Wainwright v. Witt*, 469 U. S. 412, 424 (II) (105 SC 844, 83 LE2d 841) (1985).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 6, 2006 —
RECONSIDERATION DENIED DECEMBER 15, 2006.

*Harvey & McCormack, Walter B. Harvey, Elrod & Elrod, Christopher D. Elrod*, for appellant.

*Michael H. Crawford, District Attorney, Thurbert E. Baker, Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.