S09A0112. ANDERSON v. THE STATE.
S09A0166. WALLACE v. THE STATE.

(678 SE2d 84)

THOMPSON, Justice.

Defendants Jabrian Anderson and Edward Wallace were convicted of malice murder and possession of a firearm by a convicted

felon in connection with the shooting death of Tamauris Smith.[1] They appeal, asserting, inter alia, ineffective assistance of trial counsel. For the reasons set forth below, we affirm.

1. Viewing the evidence in the light most favorable to the verdict, the jury was authorized to find the following: Jabrian Anderson, Prince Price, and the victim were riding in a burgundy Grand Am. Price was driving. He followed Kentavious Peavy, who was driving a white Chevy Malibu. Edward Wallace and Stantavis King were Peavy's passengers. When the Grand Am pulled over, Wallace told Peavy to stop the Malibu. Anderson and the victim got out of the Grand Am and Anderson held the victim at gunpoint with an AK-47. Wallace jumped out of the Malibu and approached the Grand Am with a .45 caliber handgun. The victim started running; Wallace and Anderson fired their weapons and the victim fell to the ground. Anderson stood over the victim with the rifle and fired several more times. The victim was mortally wounded; he suffered five back-to-front bullet wounds. Shell casings from a .45 caliber handgun as well as an AK-47 were found at the scene.

The evidence was sufficient to enable any rational trier of fact to find defendants guilty beyond a reasonable doubt of the crimes for which they were convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Defendants assert the trial court erred in curtailing cross-examination of the victim's girlfriend, Charity Willoughby. On direct examination, Willoughby testified that she last saw the victim at a Citgo gas station, and that police often frequent that gas station. In addition, Willoughby testified that the victim called her later and told her he was with Anderson and Price; that several hours later, Anderson used the victim's cellphone to call her; and that Anderson asked her about the victim's whereabouts, adding that the victim borrowed his "chopper" to perpetrate a robbery at the Citgo gas station. Testifying further, Willoughby averred that she was skeptical about Anderson's story because she did not believe the victim

---

[1] The murder occurred on April 9, 2005. The grand jury indicted defendants on June 30, 2005, and charged them with malice murder, felony murder, aggravated assault, and possession of a firearm by a convicted felon. Trial commenced on August 14, 2006, and the jury returned its verdict on August 18, finding Anderson guilty of malice murder, felony murder, aggravated assault and possession of a firearm by a convicted felon; and finding Wallace guilty of malice murder, aggravated assault and the firearm possession charge. Defendants were sentenced to life in prison and an additional five-year term to run consecutively. Each defendant timely filed a motion for new trial. The motions were denied on July 25, 2008. Anderson filed a notice of appeal on August 20, 2008; Wallace filed a notice of appeal on August 7, 2008. Anderson's appeal was docketed in this Court on September 24, 2008; Wallace's appeal was docketed in this Court on October 8, 2008. Each case was submitted for decision on briefs.

would do anything at the gas station when the police were there so frequently. On cross-examination by Wallace, Willoughby was asked to clarify her response and she replied: "I wouldn't believe that he would get out of a car [with an AK-47] at a place where police were." She added: "Or that he would do something he would get locked up for." In an attempt to "impeach" the witness, Wallace then asked if the victim ever implied that he killed someone. The State interposed an objection and, in the ensuing colloquy, Anderson argued that

> the reason I'm trying to offer it is we believe the evidence is going to show that [the victim] was going to use the [AK-47] to go to try to rob Mr. Wallace. And we are trying to buttress his violent propensity by showing that he has made these admissions to Ms. Willoughby in the past about other violent acts.

The trial court sustained the State's objection.

Even if it can be said that the trial court abused its discretion in limiting this line of questioning, but see *Roseberry v. State*, 274 Ga. 301, 303 (2) (553 SE2d 589) (2001) (murder victim's character is generally irrelevant), we find no harmful error because the jury heard other testimony demonstrating that the victim may have previously committed violent, criminal acts, including a murder. See *Cane v. State*, 285 Ga. 19 (2) (673 SE2d 218) (2009). Moreover, the evidence of defendants' guilt, which included the testimony of several eyewitnesses, was overwhelming. See generally *Johnson v. State*, 238 Ga. 59, 60-61 (230 SE2d 869) (1976).

3. Anderson argues that his trial counsel rendered ineffective assistance in several respects. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U. S. 668, 686 (II) (104 SC 2052, 80 LE2d 674) (1984). This inquiry consists of two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said

that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687 (III).

With regard to the first part of the inquiry, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. *Flanigan v. State*, 269 Ga. 160 (2) (496 SE2d 255) (1998). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, supra at 689 (III) (A). The test "has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted." *Jefferson v. Zant*, 263 Ga. 316, 318 (3) (a) (431 SE2d 110) (1993).

(a) Anderson posits that trial counsel was ineffective because he objected on "relevancy" grounds when Willoughby testified that she did not believe Anderson gave the victim his "chopper" to commit a robbery. In this regard, Anderson argues that trial counsel should have objected on the grounds of speculation, opinion, and credibility, inasmuch as credibility determinations are to be made by jurors, not witnesses. We disagree. Anderson has not shown that defense counsel acted outside the wide range of professional conduct to the point that the adversarial process at trial failed him. Reasonable decisions as to whether to raise a specific objection are ordinarily matters of trial strategy and provide no ground for reversal. *Dickerson v. State*, 275 Ga. App. 695, 700 (3) (621 SE2d 831) (2005).

Even if it can be said that counsel's performance was substandard, Anderson failed to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U. S. at 694 (III) (B). In this regard, we note that even if counsel had been successful in excluding Willoughby's statement that she did not believe Anderson, other witnesses contradicted Anderson's account of the victim's disappearance, asserting that it was a bogus cover story.

(b) Anderson asserts that in cross-examining Stantavis King, his counsel failed to elicit the fact that, prior to giving an incriminating statement to police, a detective showed King a written statement made by Kentavious Peavy — the implication being that King did nothing more than parrot Peavy's version of events. This assertion is without merit for the simple reason that the detective did not show Peavy's written statement to King; the detective told him only a few details about the statement so he would realize that Peavy was cooperating and police were not "bluffing."

(c) Contrary to Anderson's assertion, his trial counsel's cross-examination of Prince Price was extensive and thorough and he did elicit details about Price's contacts with Wallace in jail. Moreover, Anderson's claim that Price exonerated Wallace and implicated Anderson because Wallace and Price were cell mates does not withstand scrutiny. Price's testimony at trial implicated both Anderson and Wallace in the murder.

4. Wallace claims the trial court's instructions were misleading because, although the jury was told he was convicted of making false statements, it was not informed that his status as a convicted felon was only pertinent with regard to the weapons charge. We need not consider this claim because counsel did not request such a limiting instruction. See *Holsey v. State*, 281 Ga. 177, 179 (3) (637 SE2d 32) (2006), in which we observed that "upon request" a trial court should instruct the jury that evidence of a prior conviction is to be considered only with regard to a possession charge. See also *Murphy v. State*, 270 Ga. 72 (2) (508 SE2d 399) (1998) (failure to request limiting instruction precludes finding that trial court erred in failing to give limiting instruction on use of extrinsic act evidence).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 8, 2009.

Jabrian Anderson, *pro se* (case no. S09A0112).
*Wystan B. Getz*, for appellant (case no. S09A0166).
*Gwendolyn Keyes Fleming*, District Attorney, *Daniel J. Quinn, Barbara B. Conroy*, Assistant District Attorneys, *Thurbert E. Baker*, Attorney General, *Reggie A. Lampkin*, Assistant Attorney General, for appellee.