## S10A1315. BROWN v. THE STATE.

### (703 SE2d 609)

CARLEY, Presiding Justice.

After a jury trial, Anthony Demetrius Brown was found guilty of the felony murder of Veronica Norwood during the commission of aggravated assault, criminal damage to property in the second degree, and hindering a person making an emergency telephone call. The trial court entered judgments of conviction and sentenced Appellant to life imprisonment for murder, a consecutive five-year term for the property damage charge, and 12 months for hindering an emergency call. A motion for new trial was denied, and Brown appeals.[*]

1. Construed most strongly in support of the verdicts, the evidence shows that the victim was Brown's girlfriend, resided with him in a rented mobile home, and was verbally and physically abused by him. The victim began residing with her friend Kerlanda Reynolds and, on May 25, 2003, the two women went to the mobile home to retrieve the victim's belongings. Brown's cousin Antwan McBride also came to the mobile home. After Brown and the victim had argued for some time, Brown struck her, causing her mouth to bleed. When the victim exited through the front door, Brown pushed her off the steps to the ground and poured gasoline on her, some of which got on him. Brown followed the victim back inside, asked McBride and Ms. Reynolds for a lighter, lit a paper towel on a hotplate, and went to the master bathroom where he threw the paper onto the victim, causing her to burst into flames. When Ms. Reynolds attempted to call 9-1-1, Brown snatched the phone from her hand and hung it up, causing her to flee to a neighbor to call 9-1-1.

After McBride began to drive Brown and the victim to the hospital, they were stopped by a deputy and told to wait for an ambulance. Brown told paramedics that he and the victim were mowing grass and had to get more gasoline and that, as they were entering the shower, he decided to smoke a cigarette and lit it, and they both went up in flames. They were taken to the hospital and eventually airlifted to another hospital. On July 15, 2003, Brown told investigators that, as he was leaving, the victim swiped him with a piece of paper with gasoline on it, they became covered in gasoline as they struggled over a gasoline can and, when he went into the

---

[*] The crimes occurred on May 25, 2003, and the grand jury returned an indictment on March 31, 2006. The jury found Brown guilty on January 27, 2009 and the trial court entered the judgments of conviction and sentences on January 29, 2009. The motion for new trial was filed on February 10, 2009, amended on January 22, 2010, and denied on February 1, 2010. Brown filed the notice of appeal on February 8, 2010. The case was docketed in this Court for the April 2010 term and orally argued on July 5, 2010.

bedroom, the victim was holding a lit match which she dropped when he drew back and she may have thought that he was going to hit her. The victim, who suffered third-degree burns over 90% of her body, remained in a medically induced coma for several months and died just two weeks after returning home.

Brown contends that the felony murder conviction must be reversed because the evidence is insufficient to show that he caused the victim's death. Brown argues that the victim died of community-acquired pneumonia and would have survived if she had gone to the hospital on the day before her death as her doctor directed, where she would have received antibiotics. However, the forensic pathologist who conducted the autopsy testified that the victim died as a delayed result of extensive thermal injuries, that her heart problems, pneumonia, and death were all related to those injuries, and that consideration of any refusal of antibiotics would not change his opinion. The victim's doctor testified that, because of her pulmonary edema, antibiotics would not have made any difference in her chance of recovery, that she died of respiratory insufficiency which was consistent with her previous burns, that she did agree to home care including an unsuccessful IV, and that he seriously doubted that hospital care would have caused her to live. Based on this evidence, a rational jury was authorized to conclude that the victim's thermal injuries directly and materially contributed to the happening of a subsequent accruing immediate cause of her death. *Bryant v. State*, 270 Ga. 266, 268 (1) (a) (507 SE2d 451) (1998). See also *Dyers v. State*, 277 Ga. 859, 860 (1) (596 SE2d 595) (2004); *Green v. State*, 266 Ga. 758, 760 (2) (b) (470 SE2d 884) (1996); *Dunbar v. State*, 263 Ga. 769, 770 (5) (438 SE2d 356) (1994).

Brown also contends that the underlying aggravated assault conviction was based on insufficient evidence, as no one other than he and the victim could see what happened in the bedroom when the fire started because the door was closed. Contrary to Brown's argument, his statement that the victim started the fire when she dropped a lighted match was not the only evidence of what happened. Ms. Reynolds testified that the door was open, she could see into the bathroom, and she saw Brown run into the bathroom with a burning paper towel and throw it onto the victim. Although McBride testified that the door was closed, his testimony also provided support for a finding that Brown intended to set the victim on fire. Conflicts in the testimony of witnesses "" "" 'are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.' (Cit.)" (Cit.)' [Cit.]" *Williams v. State*, 287 Ga. 199, 200 (695 SE2d 246) (2010). Considered in the light most favorable to the verdict, the evidence clearly was sufficient

to authorize a rational trier of fact to find beyond a reasonable doubt that Brown caused the victim's death while committing an aggravated assault against her by intentionally pouring gasoline onto her and throwing a lighted paper towel on her body. See *Sanders v. State*, 281 Ga. 36 (1) (635 SE2d 772) (2006); *Lowe v. State*, 276 Ga. 538-539 (1) (579 SE2d 728) (2003); *Alexander v. State*, 263 Ga. 474, 475 (1) (435 SE2d 187) (1993); *Johnson v. State*, 246 Ga. App. 109, 111 (2) (539 SE2d 605) (2000).

Contrary to Brown's further contention, the same evidence supports the guilty verdict with respect to criminal damage to property in the second degree. Brown also asserts that the State failed to produce any evidence that the owner of the mobile home did not consent to the fire. However, in charging on criminal damage to property in the second degree as a lesser included offense of arson in the first degree, the trial court charged only on that method of committing the property damage offense which is contained in subsection (a) (2) of OCGA § 16-7-23. Lack of consent is not an element of the offense defined in that subsection, unlike subsection (a) (1).

Brown urges that the conviction for hindering an emergency phone call must be reversed because there was no evidence that he ever intended to cause or allow physical harm to Ms. Reynolds. However, that offense is set forth in OCGA § 16-10-24.3, which applies to "[a]ny person who verbally or physically obstructs, prevents, or hinders another person with intent to cause or allow physical harm or injury to another person from making or completing a 9-1-1 telephone call . . . ." This repeated use of the phrase "another person" is analogous to the language of the robbery statute prohibiting a person from taking "property of another from the person or the immediate presence of another . . . ." OCGA § 16-8-40 (a). That statute clearly does not require that the "property of another" be taken from the same person who owns the property. Instead, it can be taken from yet another. The property may be owned by and taken from two different persons. "[I]t does not matter exactly whose property was taken so long as it was taken from a 'person or the immediate presence of another.' [Cit.]" *Ward v. State*, 304 Ga. App. 517, 522 (1) (a) (696 SE2d 471) (2010). The legislature knows how to indicate that two references to a person other than the perpetrator both refer to the same person. See OCGA §§ 16-6-22.1 (b) ("another person without the consent of that person"), 16-6-22.2 (b) ("another person without the consent of that person"), 16-7-21 (a) ("property of another without consent of that person" or "that other person"). We conclude that OCGA § 16-10-24.3 does not require that the perpetrator intend to cause or allow harm to the person who is hindered from making a 9-1-1 call. The evidence in this case authorized the jury to find that

Brown, with the intent to cause or allow physical harm to the victim, hindered Ms. Reynolds from making a 9-1-1 call.

The evidence was sufficient to enable a rational trier of fact to find Brown guilty beyond a reasonable doubt of all of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Brown enumerates as error the trial court's refusal to give his requests to charge on involuntary manslaughter, simple assault, and simple battery as lesser included offenses.

Brown argues that instructions on simple assault and on involuntary manslaughter during commission of that unlawful act were authorized by his statement that the victim dropped a lighted match when he drew back and she may have thought that he was going to hit her. That statement constituted some proof only that the gasoline caught fire accidentally while Brown was trying to prevent the consequences of the victim's dangerous conduct. Thus, this evidence did not show that Brown committed any crime at all with respect to the lighting of the gasoline, while all of the other evidence in this regard showed that Brown intentionally set the victim on fire. See *McClure v. State*, 278 Ga. 411, 413 (4) (603 SE2d 224) (2004); *Bellamy v. State*, 272 Ga. 157, 159 (2) (527 SE2d 867) (2000). "'"Where, as here, the evidence shows either the commission of the completed offense (of felony murder and aggravated assault), or the commission of no offense, the trial court is not required to charge the jury on a lesser included offense."'' [Cits.]" *McClure v. State*, supra.

Brown also argues that a charge on involuntary manslaughter was warranted by evidence that he unintentionally caused the victim's death by a lawful act performed in an unlawful manner, which is holding a burning piece of paper in the bedroom where he and the victim were covered in gasoline. However, the only evidence regarding the lighted paper towel is that Brown threw it onto the victim. Therefore, "the evidence, including [Brown's and Ms. Reynolds'] version[s] of events, did not warrant a charge on lawful act-unlawful manner involuntary manslaughter. [Cit.]" *Moore v. State*, 283 Ga. 151, 154 (3) (656 SE2d 796) (2008).

Furthermore, instructions on simple battery and involuntary manslaughter while in the commission of that unlawful act were not authorized by the evidence that Brown struck the victim in her face during their argument. The indictment specifically charged felony murder while in the commission of aggravated assault with gasoline. The alleged prior simple battery was not established by the same conduct and therefore is not a lesser included offense of the aggravated assault. See *Waits v. State*, 282 Ga. 1, 4 (2) (644 SE2d 127) (2007). Moreover, the State neither advanced, nor sought instructions regarding, the theory that Brown should be convicted for

striking the victim in the face or that this act led to the victim's death. "A defendant is not entitled to an instruction on an offense for which he is not being tried, and which is not a lesser included offense of the one he is defending. [Cit.]" *Belton v. State*, 270 Ga. 671, 675 (6) (512 SE2d 614) (1999).

3. The trial court admitted hearsay statements made by the victim to her mother and to Ms. Reynolds regarding prior physical abuse by Brown. Brown contends that admission of these statements violated Brown's right to confront witnesses as set forth in *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004) and *Davis v. Washington*, 547 U. S. 813 (126 SC 2266, 165 LE2d 224) (2006). However, the victim's hearsay statements were not remotely similar to the prior testimony or police interrogation described in those cases, as they were made in conversations with her friend and with her mother, before the commission of the crimes with which Brown was charged, and without any reasonable expectation that they would be used at a subsequent trial. *Demons v. State*, 277 Ga. 724, 727-728 (4) (595 SE2d 76) (2004). "None of the out-of-court statements by [the victim] recounted at trial were even arguably 'testimonial' as the United States Supreme Court had used that term in its recent Confrontation Clause jurisprudence." *Smith v. State*, 284 Ga. 304, 308 (3) (c) (667 SE2d 65) (2008).

Brown further contends that the victim's statements were inadmissible under the necessity exception to the hearsay rule because they did not bear sufficient indicia of trustworthiness. Although our current precedent on this subject was based on constitutional grounds which have recently been undermined, we do not yet need to determine the remaining validity of that precedent, because it favors Brown and we find no reversible error thereunder. *Stinski v. State*, 286 Ga. 839, 848-849 (38) (691 SE2d 854) (2010). Contrary to Brown's assertions, there was evidence establishing that the victim had close relationships with her mother and Ms. Reynolds, confiding in both of them and accepting shelter in their homes after Brown's abusive behavior. See *Devega v. State*, 286 Ga. 448, 449 (3) (689 SE2d 293) (2010); *Thomason v. State*, 281 Ga. 429, 433 (12) (637 SE2d 639) (2006); *Bell v. State*, 278 Ga. 69, 72 (3) (597 SE2d 350) (2004); *Demons v. State*, supra at 727 (4).

> "A trial court does not abuse its discretion when it admits ... hearsay testimony consisting of uncontradicted statements ... by an unavailable witness to individuals in whom the declarant placed great confidence and to whom the declarant turned for help with problems." [Cit.]

*Smith v. State*, supra. Furthermore, the asserted omissions or

uncertainties in the witnesses' testimony regarding the time and specific circumstances of the alleged incidents of abuse go to the weight and credibility of that testimony, and Brown had the opportunity to cross-examine the witnesses. See *Devega v. State*, supra; *Allen v. State*, 284 Ga. 310, 314 (2) (667 SE2d 54) (2008). Our independent review of the record confirms that the trial court did not abuse its discretion in holding that the out-of-court statements were admissible under the standards set forth in *Chapel v. State*, 270 Ga. 151, 154-156 (4) (510 SE2d 802) (1998). *Smith v. State*, supra; *Bell v. State*, supra.

4. Prior to trial, Brown served subpoenas duces tecum seeking the psychiatric records of Ms. Reynolds. The State thereafter filed a motion to quash the subpoenas, which the trial court granted after conducting an in camera inspection of the records and determining that they did not contain any material which was either exculpatory or usable as impeachment under Georgia law. Brown asks this Court to review Ms. Reynolds' sealed psychiatric records and to determine that this ruling was either wholly or partially erroneous.

After reviewing those records, we find that they were prepared in the course of treatment and that the psychiatrist-patient privilege established in OCGA § 24-9-21 (5) applied to them. *Lucas v. State*, 274 Ga. 640, 645 (8) (555 SE2d 440) (2001). We also conclude that the trial court correctly found that the records do not contain any material which is exculpatory or which would impeach Ms. Reynolds' credibility. Brown relies upon *Bobo v. State*, 256 Ga. 357, 360 (4) (349 SE2d 690) (1986), in which

> [a] plurality of this Court ... held that "(i)n order to abrogate the psychiatrist-patient privilege, the (criminal) defendant must make a showing of necessity, that is, that the evidence in question is critical to his defense and that substantially similar evidence is not otherwise available to him." [Cit.] Applying that standard, we find that the trial court did not err in failing to disclose portions of the records that reflected psychiatrist-patient communications. Pretermitting the question of whether the trial court erred by failing to disclose any of the remaining portions of the records, we find beyond a reasonable doubt that their disclosure to [Brown] would not have affected the outcome ... of the trial.

*Lucas v. State*, supra.

5. Brown urges that the trial court erroneously ruled that evidence of the victim's prior conviction for simple battery was inadmissible. However, Brown failed to make the requisite prima

facie showing that the victim was the aggressor, that she assaulted him, and that he was honestly trying to defend himself. *Lewis v. State*, 268 Ga. 83, 84 (2) (485 SE2d 212) (1997). Indeed, we note in this regard that Brown did not testify and that the trial court charged the jury on voluntary manslaughter and accident, but not on justification. Although Brown argues that he and the victim were engaged in mutual combat, that circumstance does not raise a defense of justification. *McKee v. State*, 280 Ga. 755, 756 (2) (632 SE2d 636) (2006). "Because the sole evidence of justification in this case was the victim's prior violent act[ ] against a third party, [cit.] th[is] prior act[ ] [was] inadmissible . . . ." *Strong v. State*, 264 Ga. 837, 838 (2) (452 SE2d 97) (1995).

Moreover, the victim's mother testified, without objection, that the victim pled guilty to battery during a fight with a former boyfriend who also pled guilty. The trial court specifically allowed Brown to refer in closing argument to any such evidence which was admitted without objection. Thus, even if the trial court erred in excluding evidence of the victim's prior battery conviction, any error was harmless. See *Anderson v. State*, 285 Ga. 496, 498 (2) (678 SE2d 84) (2009); *Lewis v. State*, supra at 85 (2).

*Judgments affirmed. All the Justices concur.*

HUNSTEIN, Chief Justice, concurring.

I concur fully in the judgment but write to emphasize how this case demonstrates the proper application of proximate cause in felony murder appeals, in contrast to the recently decided opinion in *State v. Jackson*, 287 Ga. 646 (697 SE2d 757) (2010). The instant case involves a defendant who doused the victim with gasoline and then set her on fire, directly inflicting the injuries that proximately caused her death. See OCGA § 16-2-20 (b) (1). His conviction for felony murder is thus wholly consistent with the well-established principle that

> [w]here one inflicts an unlawful injury, such injury is to be accounted as the efficient, proximate cause of the death, whenever it shall be made to appear, either that (1) the injury itself constituted the sole proximate cause of the death; or that (2) the injury directly and materially contributed to the happening of a subsequent accruing immediate cause of the death; or that (3) the injury materially accelerated the death, although proximately occasioned by a pre-existing cause.

*Wilson v. State*, 190 Ga. 824, 829 (10 SE2d 861) (1940). See also *Larkin v. State*, 247 Ga. 586 (1) (278 SE2d 365) (1981) ("[w]here one

inflicts an unlawful injury, such injury is the proximate cause of death if the injury 'directly and materially contributed to the happening of a subsequent accruing immediate cause of the death'"). Under this principle, this Court has upheld the murder convictions of the following defendants: one who hit and kicked the victim, causing him to fall headfirst onto a concrete parking lot, fatally injuring him[1]; a defendant who shot the victim in the leg, causing the victim to fall out of his car, which then rolled over and killed him[2]; a defendant who exchanged gunshots with the victim during a burglary, causing the victim to die of a heart attack[3]; a defendant who stabbed his victim, causing her to later die due to a complication arising from surgery required to re-stitch the knife wound[4]; a defendant who threw his drunken victim off a bridge into a river, where the victim then drowned[5]; and a defendant who smashed the victim's skull with a hatchet, resulting in the victim's death nine months later from infection.[6]

In each of these cases, the defendant *injured* the victim in some manner that led to the victim's death. In marked contrast to this line of cases, *Jackson* involved two defendants charged with felony murder who never inflicted *any* injuries on the victim that led to the victim's death. OCGA § 16-2-20 (b) (1). Moreover, they never intentionally caused another to commit the injuries that led to the victim's death, id. at (b) (2); never intentionally aided or abetted in the commission of the injuries that led to the victim's death, id. at (b) (3); and never intentionally advised, encouraged, hired, counseled or procured another to commit the murder. Id. at (b) (4). The only thing the defendants in *Jackson* allegedly did was to set in motion a series of events that ultimately prompted the actual shooter, who was the intended target of the defendants' armed robbery, to fire at and kill one of the defendants' co-conspirators. Rather than upholding established Georgia precedent and recognizing that the defendants in *Jackson* could not be deemed criminally responsible for the victim's death, the majority in *Jackson* instead imported civil tort liability principles into Georgia criminal law in order to usurp the legislative prerogative by crafting a wholly new basis for criminal liability in this State.

---

[1] *Skaggs v. State*, 278 Ga. 19 (596 SE2d 159) (2004).

[2] *Williams v. State*, 255 Ga. 21 (334 SE2d 691) (1985).

[3] *Durden v. State*, 250 Ga. 325 (297 SE2d 237) (1982). See also *Dupree v. State*, 247 Ga. 470 (277 SE2d 18) (1981) (defendant who robbed elderly victim found guilty of felony murder when victim died of heart failure brought on by stress and injuries incurred during the robbery).

[4] *Larkin v. State*, 247 Ga. 586 (278 SE2d 365) (1981).

[5] *Ward v. State*, 238 Ga. 367 (233 SE2d 175) (1977).

[6] *Wilson v. State*, supra, 190 Ga. at 824.

*Jackson* is thus both factually distinguishable from this case and legally distinguishable from the well-established principle of law on which it is based. The facts here serve only to demonstrate how ill-advised the *Jackson* majority was to judicially rewrite OCGA § 16-2-20 to add this new form of criminal liability. Although the majority carefully avoids citing *Jackson* here, it should seize this opportunity to overrule it before *Jackson* proximately causes any further damage to this area of criminal law.

NAHMIAS, Justice, concurring.

The Chief Justice's concurring opinion urges the Court to overrule *State v. Jackson*, 287 Ga. 646 (697 SE2d 757) (2010), rehashing the arguments rejected by a majority of the Court just a few months ago. This request is entirely gratuitous, because as the concurrence acknowledges, this case does not involve the factual scenario at issue in *Jackson* and would be decided the same way regardless of *Jackson*. Moreover, it is simply wrong to say that *Jackson* "imported civil tort liability principles into Georgia criminal law" or created a "new basis for criminal liability in this State." Concurring Op. at 371. To the contrary, proximate cause has been the causation standard applied throughout our criminal, homicide, and felony-murder case law for decades. See Maj. Op. at 365 (citing cases); Concurring Op. at 370-371 & n. 1-6 (citing cases); *Jackson*, 287 Ga. at 648-652 & n. 1-2, 4 (citing numerous cases). It was the case that *Jackson* overruled which unaccountably departed from this otherwise consistent and long-standing Georgia law. The Court today properly declines the invitation to overrule *Jackson*, and it should do the same in future cases where the issue is actually relevant.

DECIDED NOVEMBER 1, 2010 —
RECONSIDERATION DENIED DECEMBER 14, 2010.

*Edwards & Edwards, H. B. Edwards III*, for appellant.
*J. David Miller, District Attorney, Tracy K. Chapman, Assistant District Attorney, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mary K. Ware, Assistant Attorney General*, for appellee.