In the Supreme Court of Georgia

Decided: January 19, 2016

S15A1407. GATES v. THE STATE.

MELTON, Justice.

Following a jury trial, Lamar Gates was found guilty of malice murder and

various other crimes in connection with the shooting death of Anthony Wilson.[1]

On appeal, Gates contends, primarily, that the trial court erred in allowing

---

[1] On February 28, 2013, Gates was indicted on one count of malice murder, two counts of felony murder (predicated on aggravated assault and possession of a firearm by a convicted felon), one count of aggravated assault, one count of possession of a firearm by a convicted felon, and one count of possession of a firearm during the commission of a felony. Following a November 6–12, 2013 jury trial, Gates was found guilty on all counts. On December 18, 2013, the trial court sentenced Gates to life imprisonment for malice murder, five years concurrent for possession of a firearm by a convicted felon, and five consecutive years for possession of a firearm during the commission of a felony. The aggravated assault count was merged into the malice murder count for sentencing purposes, and the felony murder counts were vacated by operation of law. See Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). Gates filed a motion for new trial on January 13, 2014, which he amended with new counsel on September 22, 2014. Following a November 4, 2014 hearing, the court denied the motion on November 17, 2014. Gates's timely appeal was docketed in this Court for the September 2015 Term, and the case was orally argued on September 14, 2015.

certain evidence to be admitted at trial, including various text messages and "other act" evidence in violation of the rules set forth in Georgia's new Evidence Code;[2] that the prosecutor engaged in prosecutorial misconduct in his closing argument; and that Gates's trial counsel was ineffective. For the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence presented at trial revealed that, on November 30, 2012, police were called to an apartment complex in DeKalb County, where they found Anthony Wilson shot six times and deceased in the parking lot. At the scene, police recovered ten 9-millimeter cartridge casings, all of which were determined to be fired from the same firearm. At the time of the shooting, Gates, a convicted felon, lived in one of the buildings at the apartment complex with his girlfriend, Elizabeth Perticari, who formerly bought marijuana from the victim, Wilson.

The day before the shooting, Wilson sent Perticari pictures of his genitals from his cell phone. Wilson also sent Perticari a text message, which stated: "yu eva lonely yu can call me ;)))) [*sic*.]" Later that evening, Gates took Corey

___

[2] Because this case was tried after January 1, 2013, Georgia's new Evidence Code is applicable here.

2

Perry, a neighbor, to a fast food restaurant, where he bemoaned Wilson sending the naked pictures to his girlfriend and told Perry that he was going to "see about" Wilson. On several prior occasions, Gates had shown Perry firearms that he had purchased, and, on the Sunday before the murder, Gates showed Perry and his wife a handgun.

The day of the shooting, Gates picked up Perticari from work and brought her back to their apartment around 4:00pm. After arriving, Perticari took her dog outside, saw Wilson, and confronted him about sending the genitalia pictures and message the day before. Gates followed Perticari out of the apartment. Moments later, Perticari heard gunshots and her dog pulled her away from the scene. Two eyewitnesses who knew Gates saw him shoot Wilson multiple times and leave the scene in his green pickup truck. Four days after the shooting, on December 4, 2012, law enforcement officers identified Gates's truck in a parking lot, surrounded him, and took him into custody. During the arrest, officers found a loaded .45-caliber handgun in the truck.[3]

The evidence was sufficient to enable a rational trier of fact to find Gates

---

[3] Gates was not charged with possession of this handgun.

guilty of all of the crimes of which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Gates asserts that the trial court erred in admitting into evidence the text message that Wilson sent Perticari along with naked pictures of himself, arguing the text message was inadmissible hearsay. We disagree, however, as the text message here did not constitute hearsay.

For a statement to constitute hearsay, it must be "offered in evidence to prove the truth of the matter asserted." OCGA § 24-8-801 (c). Here, the declarant's statement at issue was: "yu eva lonely yu can call me ;)))) [*sic*.]" The text message sent along with the naked pictures was not offered to prove that Gates's girlfriend could in fact call, or had permission to call, Wilson if she were lonely. Rather, the text message was offered to show its effect on Gates and his motive for committing the murder. See United States v. Cruz, 805 F.2d 1464, 1478 (III) (11th Cir. 1986) ("[A]n utterance may be admitted to show the effect it has on a hearer") (citation omitted); See also Miller v. State, 275 Ga. 32, 36 (4) (561 SE2d 810) (2002) ("[F]or such a purpose, the statement[] would not be hearsay as [it was] not offered for the truth of the matters asserted, but for the effect, or lack thereof, on the hearer."). As such, Gates's claim that this evidence

4

was inadmissible because it was hearsay is without merit.

3. Gates contends that the trial court committed plain error by admitting evidence and allowing testimony regarding firearms that were not the murder weapon. We disagree.

Although Gates did not object to this evidence at trial, under Georgia's new Evidence Code, the rulings related to this evidence are subject to review on appeal for "plain error[] affecting substantial rights." OCGA § 24-1-103 (d). We have adopted the federal plain-error standard, articulated by the United States Supreme Court in Puckett v. United States, 556 U.S. 129, 135 (II) (129 SCt 1423, 173 LE2d 266) (2009), when reviewing jury charges that a defendant fails to object to at trial. See State v. Kelly, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011). And, in this regard, "[m]any provisions of the new Evidence Code were borrowed from the Federal Rules of Evidence, and when our courts consider the meaning of these provisions, they look to decisions of the federal appeals courts construing and applying the Federal Rules, especially the decisions of the Eleventh Circuit." (Citation omitted.) State v. Frost, 297 Ga. 296, 299 (773

SE2d 700) (2015).[4] For plain-error review of rulings on evidence, the Eleventh

Circuit's test tracks the four-pronged standard we adopted in Kelly, supra.[5]

Accordingly, the same plain-error standard that we adopted in Kelly with respect

to jury charges also applies to rulings on evidence. Specifically:

> First, there must be an error or defect – some sort of "[d]eviation from a legal rule" – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the trial court proceedings." Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial

---

[4] We also note that some "provisions of the new Evidence Code were carried over from our old Evidence Code, and when courts consider the meaning of those provisions, they may rely on Georgia decisions under the old Code." Frost, supra, 297 Ga. at 299.

[5] Indeed, as the 11th Circuit stated in United States v. Edouard, 485 F.3d 1324, 1343, n.7 (II) (C) (11th Cir. 2007):

> Under plain error review, there must be (1) an error, (2) that is plain, and (3) that affects the defendant's substantial rights. For an error to affect substantial rights, "the error must have been prejudicial: It must have affected the outcome of the district court proceedings." If the first three conditions are met, we may correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings."

(citations omitted).

6

proceedings.'"

Kelly, supra, 290 Ga. at 33 (2) (a), quoting Puckett, supra, 556 US at 135 (II). Thus, beyond showing a clear or obvious error, "plain-error analysis . . . requires the appellant to make an affirmative showing that the error probably did affect the outcome below." (Citation and punctuation omitted.) Shaw v. State, 292 Ga. 871, 873 (2) (742 SE2d 707) (2013).

Here, Gates challenges the admission of testimony regarding other guns that he owned (not the murder weapon) and evidence and testimony relating to a .45-caliber handgun (also not the murder weapon) that was found during his arrest. However, pretermitting the question whether this evidence could have been properly admitted under OCGA § 24-4-404 (b) (Rule 404 (b)), Gates cannot "affirmative[ly] show[] that the [alleged] error probably did affect the outcome below." Shaw, supra. Indeed, in light of the overwhelming evidence of Gates's guilt—including evidence that he gunned down Wilson in the middle of the afternoon in front of two eyewitnesses who knew him and in the presence of his girlfriend, after promising to others that he was going to "see about" Wilson—it cannot be said that any error in the admission of this other evidence likely affected the outcome below.

4. Next, Gates alleges that the prosecutor engaged in prosecutorial misconduct by making arguments during his closing about Gates's propensity to use guns, and that the trial court committed plain error by allowing the prosecutor to make such arguments. Specifically, Gates points to portions of the prosecutor's closing argument in which he encourages the jury to "connect the dots" between the fact that eyewitnesses saw Gates shoot Wilson with a gun on November 30, 2012, with other testimony showing that Gates, a convicted felon, had shown guns to other people in the past and possessed a loaded handgun at the time of his arrest. However, as explained more fully below, because Gates did not object to the prosecutor's argument at trial, he has waived review of these arguments on appeal, as the alleged errors here based on improper remarks during closing argument are not subject to review on appeal for plain error.

As an initial matter, Georgia's new Evidence Code, specifically OCGA§ 24-1-103, deals with "ruling[s] which admit[] or exclude[] *evidence*" (emphasis supplied), and it is well settled that closing arguments do not amount to evidence. See, e.g., <u>Jordan v. State</u>, 293 Ga. 619 (2) (b) (748 SE2d 876) (2013). See also OCGA § 24-1-103 (d) ("Nothing in *this* Code section [specifically concerning 'ruling[s] which admit[] or exclude[] evidence ']shall preclude a

8

court from taking notice of plain errors affecting substantial rights"). Furthermore, the published Eleventh Circuit cases that allow for plain error review of improper closing arguments in criminal cases do not do so pursuant to Federal Rule of *Evidence* 103, upon which OCGA § 24-1-103 is based, but Federal Rule of *Criminal Procedure* 52 (b), for which there is no Georgia state equivalent. See United States v. Bailey, 123 F.3d 1381, 1400 (II) (C) (4) (11th Cir. 1997) ("When a defendant fails to object to the prosecutor's closing argument, relief is available to rectify only plain error that is so obvious that failure to correct it would jeopardize the fairness and integrity of the trial. . . see Fed.R.Crim.P. 52(b)"); United States v. Frazier, 944 F.2d 820, 823 (11th Cir. 1991) ("Because [the defendant's] attorney failed to object to the prosecutors' allegedly improper comments during opening and closing arguments, thereby possibly precluding appellate review, we must determine whether the prosecutors' comments amounted to 'plain error' under Rule 52(b) of the Federal Rules of Criminal Procedure"); United States v. Gipson, 593 F.2d 7, 9 (5th Cir. 1979) ("Because the defense voiced no objection to the prosecutor's . . . comment in closing argument, [the defendant] must demonstrate plain error, Fed.R.Cr.P. 52(b), to obtain a reversal of his conviction"). See also United

States v. Merrill, 513 F.3d 1293, 1306-1307 (II) (E) (11th Cir. 2008), *citing* Bailey, supra. The fact that an entirely separate Federal Rule of Criminal Procedure exists to ensure that closing arguments, which are not evidence, may be reviewed for plain error in criminal cases, only underscores the notion that plain error review for alleged improper remarks during closing argument in criminal cases does not exist pursuant to Federal Rule of Evidence 103 or OCGA § 24-1-103 dealing with rulings on *evidence*. Because the Georgia Legislature has not yet made plain error review available for errors relating to alleged improper remarks being made during closing argument, our prior case law relating to the waiver of issues on appeal stemming from improper closing arguments that were not objected to at trial remains unaffected by OCGA§ 24-1-103 of Georgia's new Evidence Code. We therefore conclude that Gates has waived review of his arguments relating to the allegedly improper closing argument here due to his failure to object below. See, e.g., Scott v. State, 290 Ga. 883, 885 (2) (725 SE2d 305) (2012) ("In the appeal of a non-capital case, the defendant's failure to object to the State's closing argument waives his right to rely on the alleged impropriety of that argument as a basis for reversal") (citation and punctuation omitted).

5. Gates contends that his trial counsel was ineffective when he (a) failed to object to the evidence of and testimony about the non-murder-weapon firearms, and (b) failed to object to the prosecutor's closing argument. We disagree.

> In order to succeed on his claim of ineffective assistance, [Gates] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. Strickland v. Washington, 466 U.S. 668 (104 S.Ct. 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the Strickland test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); Fuller v. State, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

(a) Regarding the testimony about and evidence of non-murder-weapon handguns, trial counsel's decision not to object to this evidence was reasonable and strategic. "Reasonable decisions as to whether to raise a specific objection are ordinarily matters of trial strategy and provide no ground for reversal." (Citation omitted.) Anderson v. State, 285 Ga. 496, 499 (3) (a) (678 SE2d 84) (2009). Here, trial counsel testified at the motion for new trial hearing that he

11

did not object to the Perrys' testimony about the other firearms because he did not find them to be credible and he did not believe that the jury would find them to be credible, either. He even used in his closing argument the State's inability to produce the murder weapon to discredit the Perrys' testimony about Gates's alleged use of guns. Regarding the .45-caliber handgun found during Gates's arrest and the officers' testimony about it, trial counsel used this evidence to emphasize that Gates was not charged with possession of that firearm, that the State could not prove that he possessed the murder weapon, and that the State introduced this evidence to mislead the jury. This strategy was reasonable, and Gates' contention to the contrary is without merit. See Anderson, supra.

Furthermore, even if trial counsel's performance was deficient, in light of the overwhelming evidence of Gates' guilt, he cannot show a "reasonable probability that the trial result would have been different" but for trial counsel's failure to object to the introduction of the firearm evidence. See, e.g., Ballard v. State, 297 Ga. 248 (6) (a) (773 SE2d 254) (2015).

(b) Similarly, Gates cannot carry his burden of showing that his trial counsel was ineffective for having failed to object to the prosecutor's closing argument. Again, in light of the overwhelming evidence of Gates' guilt, even if

12

trial counsel's performance were deficient, Gates cannot show the requisite prejudice in order to sustain his claim of ineffective assistance. See <u>Mosley v. State</u>, 295 Ga. 123 (2) (757 SE2d 828) (2014).

<u>Judgment affirmed. All the Justices concur.</u>